UNITED STATES, Appellee

v.

David F. MORAN, Airman First Class
U.S. Air Force, Appellant

No. 06-0207

Crim. App. No. 35755

United States Court of Appeals for the Armed Forces

Argued November 15, 2006 and March 13, 2007

Decided June 22, 2007

BAKER, J., delivered the opinion of the Court, in which STUCKY and
RYAN, JJ., joined. EFFRON, C.J., filed an opinion concurring in part
and in the result. ERDMANN, J., filed an opinion concurring in the
result.

Counsel

For Appellant: Major Anthony D. Ortiz (argued); Lieutenant
Colonel Mark R. Strickland (on brief).

For Appellee: Captain Jamie L. Mendelson (argued); Colonel
Gerald R. Bruce, Lieutenant Colonel Robert V. Combs, and Major
Matthew S. Ward (on brief); Lieutenant Colonel Gary F. Spencer
and Major Kimani R. Eason.

Amicus Curiae for Appellant: Steven H. Goldblatt, Esq.
(supervising attorney), Richard H. Frankel, Esq. (supervising
attorney), Eamonn K. Moran (law student), Kate Z. Schneider (law
student) (on brief) – for the Appellate Litigation Program,
Georgetown University Law Center.

Amicus Curiae for Appellee: Hardy Vieux, Esq. (supervising
attorney), Sarah Bateman (law student), Susrut Carpenter (law
student), Karim Marshall (law student), Jennifer Myers (law
student) and Bridget Van Buren (law student) (on brief) – for
the Washington College of Law, American University.

Military Judge: Kirk Granier

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**.

Judge BAKER delivered the opinion of the Court.

Appellant was an airman first class (E-3) assigned to Keesler Air Force Base, Mississippi.  Contrary to his pleas, a general court-martial composed of officer members convicted Appellant of drunk driving, wrongful distribution of cocaine, separate specifications of wrongful use of ecstasy, cocaine, and LSD, and obstruction of justice in violation of Articles 111, 112a and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 911, 912a, 934 (2000), respectively.  Appellant was sentenced to a dishonorable discharge, confinement for twenty-four months, and reduction in grade to E-1.  The convening authority dismissed the cocaine distribution specification and reassessed the sentence, approving a bad-conduct discharge, confinement for twenty months and reduction to E-1.  The United States Air Force Court of Criminal Appeals affirmed.  United States v. Moran, No. ACM 35755, 2005 CCA LEXIS 339, at *13, 2005 WL 2875128, at *5 (A.F. Ct. Crim. App. Oct. 20, 2005) (unpublished).

On Appellant's petition we granted review of the following issue:

> WHETHER APPELLANT'S SUBSTANTIAL RIGHTS WERE
> MATERIALLY PREJUDICED WHEN PROSECUTION WITNESSES
> AND TRIAL COUNSEL COMMENTED ON APPELLANT'S
> REQUEST FOR AN ATTORNEY AND APPELLANT'S REFUSAL
> TO GIVE CONSENT FOR A SEARCH AND SEIZURE OF HIS
> HAIR AND BLOOD.

We subsequently specified two additional issues:

2

I.  WHETHER EVIDENCE REFLECTING THE ACCUSED'S
    EXERCISE OF CONSTITUTIONAL RIGHTS WAS
    ADMISSIBLE AS PART OF THE BACKGROUND
    SEQUENCE OR CHRONOLOGY OF EVENTS LEADING TO
    THE SEIZURE OR DISCOVERY OF OTHERWISE
    ADMISSIBLE EVIDENCE.

II. IF EVIDENCE OF THE ACCUSED'S EXERCISE OF HIS
    CONSTITUTIONAL RIGHTS WAS ADMISSIBLE FOR
    PURPOSES OF ESTABLISHING BACKGROUND SEQUENCE
    OR CHRONOLOGY WITHOUT OBJECTION, WAS IT
    PLAIN ERROR IF NO INSTRUCTION WAS GIVEN
    ADVISING MEMBERS THAT THE EVIDENCE COULD NOT
    BE CONSIDERED AS EVIDENCE OF GUILT OR
    CRIMINAL CONDUCT.

We conclude that trial counsel's statement was obvious error but Appellant has failed to demonstrate material prejudice to his substantial rights.  Also, assuming without deciding that admission of the contested witness statements was error, their admission was harmless beyond a reasonable doubt.  As a result, we affirm.

BACKGROUND

In the course of their testimony, three Government witnesses at the court-martial either directly or by implication mentioned Appellant's invocation of his constitutional rights. Two of these witnesses testified regarding the allegations of illegal use and distribution of controlled substances.  The other witness testified regarding the drunk driving allegation. During closing argument on findings trial counsel commented on Appellant's exercise of his rights, specifically drawing the members' attention to Appellant's exercise of his right to

counsel and implying that invocation of the right reflected his guilt.

Though Appellant requested and received an instruction on his right to remain silent, defense counsel did not object to either the witnesses' or trial counsel's statements. Further, there were no sua sponte curative or limiting instructions to the members mitigating any potential prejudice.

Appellant now argues that his substantial rights were materially prejudiced by both the witnesses' testimony and the trial counsel's argument. According to Appellant, since the drug allegations and the drunk driving offense were "hotly contested," the impermissible statements may have eliminated any reasonable doubt that the members would have otherwise entertained.

## DISCUSSION

Whether there has been improper reference to an accused's invocation of his constitutional rights is a question of law that we review de novo. United States v. Alameda, 57 M.J. 190, 198 (C.A.A.F. 2002) ("[i]ssues involving argument referring to unlawful subject matter are reviewed de novo as issues of law").

Having failed to preserve any asserted errors at trial, Appellant forfeited them absent "plain error." Military Rule of Evidence (M.R.E.) 103(a)(1), 103(d); United States v. Bungert, 62 M.J. 346, 347 (C.A.A.F. 2006). Whether there was "plain

error" is also a determination reviewed de novo.  United States v. Gudmundson, 57 M.J. 493, 495 (C.A.A.F. 2002).

Plain error is established when:  (1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to an appellant's substantial rights.  United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998).  Appellant has the burden of persuading this Court that these elements of the plain error test are satisfied. United States v. Scalo, 60 M.J. 435, 436 (C.A.A.F. 2005).

I.  References to an Accused's Constitutional Rights

The law generally discourages trial counsel's presentation of testimony or argument mentioning an accused's invocation of his constitutional rights unless, for example, an accused invites such testimony or argument in rebuttal to his own case. See, e.g., United States v. Robinson, 485 U.S. 25, 32 (1988) (finding no constitutional infirmity in a prosecutor's statement mentioning the invocation of an accused's rights if the statement was a "fair response to a claim made by defendant or his counsel"); United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005).  Such comments may serve to hinder the free exercise of such rights -- rights that carry with them the "implicit assurance that [their] invocation . . . will carry no penalty." United States v. Daoud, 741 F.2d. 478, 480 (1st Cir. 1984).

This constraint against mentioning the exercise of constitutional rights does not depend on the specific right at issue. There is "little, if any, valid distinction" between the harm caused by comments regarding an accused's invocation of any protected rights. See, e.g., United States v. Thame, 846 F.2d 200, 206 (3d Cir. 1988) (holding that for the purposes of finding improper prosecutorial comment, there is no valid difference between references to an accused's Fifth, Fourth, or Sixth Amendment rights) (citation and quotation marks omitted).[1]

This case addresses comments about an accused's exercise of his Fourth and Fifth[2] Amendment rights, matters on which this Court has ruled directly. In United States v. Turner, 39 M.J. 259, 260-61 (C.M.A. 1994), we addressed the prohibition against comments about an accused's assertion of his Fourth Amendment rights. We stated that "the same reasoning that protects from

_____

[1] This conclusion was foreshadowed by Justice Black, joined by Chief Justice Warren, Justice Brennan and Justice Douglas, in his often-cited concurrence in Grunewald v. United States, in which Justice Black argued that the "value of constitutional privileges is largely destroyed if persons can be penalized for relying on them." 353 U.S. 391, 425 (1957).

[2] In his brief, Appellant has characterized references to his right to counsel at the interrogation stage as a Sixth Amendment protection. However, the Manual for Courts-Martial (MCM) recognizes the distinction between the Fifth Amendment right to counsel and the Sixth Amendment right to counsel. The context in which Appellant has referenced the right suggests the reference is more appropriately to the Fifth Amendment. See Drafters' Analysis of the Military Rules of Evidence: Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-15 (2005 ed.).

comment an accused's exercise of a Fifth Amendment privilege applies equally to assertion of the right to privacy under the Fourth Amendment." Id. at 262 (citations omitted).

In United States v. Moore, 1 M.J. 390, 391 (C.M.A. 1976), we addressed comments regarding, inter alia, an accused's exercise of his Fifth Amendment rights stating that:

> it is the well-settled law of this Court that it is improper to bring to the attention of the triers of fact that an accused . . . asserted his rights to counsel . . . . This principle is founded upon the open-eyed realization that to many . . . the invocation by a suspect of his constitutional and statutory rights to . . . counsel equates to a conclusion of guilt -- that a truly innocent accused has nothing to hide behind assertion of these privileges.

Citations and footnotes omitted.

This conclusion is echoed in the Military Rules of Evidence (M.R.E.). "The fact that the accused during official questioning and in exercise of rights under the . . . Constitution . . . requested counsel . . . is inadmissible against the accused." M.R.E. 301(f)(3).

II. Witness Testimony

We recognize that improper statements made during witness testimony are subject both to the "crucible of cross examination" and to credibility determinations by the members. See, e.g., United States v. Best, 61 M.J. 376, 390 (C.A.A.F. 2005) (Baker, J., concurring in the result) (noting that a

7

witness's statements having been subjected to the "crucible of cross examination" provided added assurances of the witness's "integrity and impartiality").  Thus, unlike trial counsel's statements during argument, a witness's statement can be directly tested or clarified.  See United States v. Rockwood, 52 M.J. 98, 103 (C.A.A.F. 1999) (citing United States v. LeMere, 22 M.J. 61, 69 (C.M.A. 1986)); compare United States v. Prescott, 581 F.2d 1343, 1352 (9th Cir. 1978) (where the court emphasizes that it was "use by the prosecutor," rather than simple mention by a witness of the fact that the accused invoked her constitutional rights, that was dispositive).

Nonetheless, statements made by witnesses concerning the invocation of an accused's rights must be reviewed closely. This is especially so when such comments are reiterated by trial counsel and when the trial is before members rather than a military judge alone.  See, e.g., Alameda, 57 M.J. at 199 (holding that military judge committed constitutional error by permitting the prosecution to introduce evidence of the accused's post-apprehension silence as substantive evidence of guilt, and then to comment on the evidence in closing argument); compare Hill v. Turpin, 135 F.3d 1411, 1417-18 (11th Cir. 1998) (noting prosecutor's repeated references during the trial to

impermissible testimony can be determinative in finding the initial allowance of the testimony reversible error).[3]

In the present case, Appellant contends that the statements made by the three witnesses improperly mentioned the invocation of his constitutional rights and that the military judge committed plain error when he did not sua sponte strike the references and provide a corrective instruction to the members. We address each statement in turn.

### Special Agent TWB

On direct examination, Special Agent TWB of the base Office of Special Investigations (OSI) was asked by trial counsel about the investigatory interview he had with Appellant and the agent's request for a hair sample from Appellant.

> [TC:] [Under] . . . what . . . authority were you using to . . . get the body hair?
>
> [TWB:] Initially we tried consent. And he didn't consent to . . . us . . . collecting [his] body hair.

Under the Fourth Amendment, Appellant had the right to deny the special agent's initial request. Appellant reasonably contends that the reference to his refusal to consent may have led members to infer his guilt, an impermissible inference exacerbated later in the court-martial by trial counsel's

---

[3] Regarding relevant differences between military judge-alone trials and courts-martial before members, see United States v. Robbins, 52 M.J. 455, 457 (C.A.A.F. 2000) (military judges, unlike lay members, are "presumed capable of filtering out inadmissible evidence").

reference to the testimony. Indeed, in the past we have expressed our concern as well by stating that "refus[ing] to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." Turner, 39 M.J. at 262.

However, the lower court concluded that the witness's statement was "reasonably necessary to describe [the] events" about which the agent was testifying. Moran, 2005 CCA LEXIS 339, at *8, 2005 WL 2875128, at *3; see also United States v. Ross, 7 M.J. 174, 175-76 (C.M.A. 1979) (noting, without comment, that "testimonial res gestae," could permit the admission of statements "necessary to complete the chronological sequence of [an] agent's story"); United States v. Smith, 52 M.J. 337, 341 n.2 (C.A.A.F. 2000) (admitting otherwise disallowed testimony was permitted because it was part of the "res gestae" of the offense) (citing United States v. Jackson, 882 F.2d 1444, 1450 (9th Cir. 1989)). While Appellant claims that the introduction of this evidence had "'but one objective[:] to induce the jury to infer guilt,'" the Government argues that Special Agent TWB's testimony was a rational response to the trial counsel's inquiry, explaining to the court why he was unable to obtain a hair sample at the initial interview.

However, we need not ultimately resolve this issue. For we conclude that, even if the admission of this statement was

error, plain or otherwise, for the reasons stated in Section V,

it was harmless beyond a reasonable doubt.

Officer RF[4]

On direct examination Officer RF made two statements that

Appellant now challenges.

First, Officer RF was asked about the delay in obtaining a

hair sample from Appellant.

> [TC:]   Okay.  Were you able to get the [hair]
>         collection when you wanted to . . . ?
>
> [RF:]   No, sir.
>
> [TC:]   Okay, what happened to mess that up?
>
> [RF:]   The day we obtained search authorization, we
>         contacted Airman Moran's first sergeant, asked
>         him if he could please get him to our office so
>         we could collect the hair sample.  He related
>         that he [Moran] was en route to Hattiesburg,
>         Mississippi, to see his civilian attorney.  We
>         asked him, "Is there any way you can contact
>         him."  He said he could.  And we asked him to
>         please tell him just to turn around and come
>         back.  He allowed Airman Moran to continue to
>         see his -- see his attorney.

Appellant contends that the witness's comments about

Appellant's travel "to see his attorney" represented

impermissible references to his Sixth Amendment right to

---

[4] At the time of trial, Officer RF was a member of the Gulfport
Police Department.  He had previously been on active duty with
OSI during the investigation of the offenses involving
Appellant.

counsel.[5]  Further, these improper comments were aggravated by trial counsel's subsequent reference to them during the findings argument.

Second, Officer RF was asked about his failed attempt to procure a hair sample from Appellant once Officer RF had been authorized to demand the sample.  Officer RF explained that Appellant no longer "[had] enough hair on his body that [he] could obtain a hair sample."  The military judge inquired further:

> MJ:     What was Airman Moran's explanation for shaving all of his hair off?  Did you ask him?  Did he give you one?
>
> [RF:]   No, sir, I didn't.
>
> MJ:     You didn't inquire?
>
> [RF:]   The reason I didn't inquire was I felt that was an incriminating question, and I would have to advise him of his rights.  He'd already asked for counsel.  I was just there to obtain a hair sample due to the search authorization, and not to ask him questions.

Appellant contends that this line of questioning represented impermissible references to both his Fourth and Sixth Amendment rights.

Here too, the Government argues, and the lower court concluded, that Officer RF's first statement represented a logical, chronological recounting of events incident to the

---

[5] Reference to the right to counsel at issue in the case was in the context of the Fifth Amendment.

attempted seizure of hair. Under this "res gestae" analysis, it would have been unnatural for Officer RF not to mention why he was unable to secure a hair sample immediately after receiving authorization to demand one. Moreover, it does not appear that the witness was stating Appellant's whereabouts to provide the court with evidence of guilt. Indeed, the testimony was not that Officer RF knew that Appellant had gone to see his lawyer but rather that Appellant's first sergeant had told him that Appellant had done so. In this regard, it is noteworthy that this issue comes to us as an assertion of plain error. While not determinative, the absence of a defense objection suggests that defense counsel and the military judge heard this testimony in the same manner as the lower court read it on review. See, e.g., United States v. Nelson, 1 M.J. 235, 238 n.6 (C.M.A. 1975) (citing United States v. Saint John, 23 C.M.A. 20, 48 C.M.R. 312 (C.M.A. 1974); United States v. Ryan, 21 C.M.A. 9, 44 C.M.R. 63 (C.M.A. 1971); United States v. Wood, 18 C.M.A. 291, 40 C.M.R. 3 (C.M.A. 1969)).

The Government posits that Officer RF's second statement about both Appellant's shaving and Officer RF's knowledge of Appellant's prior assertion of his right to counsel was similarly a reasonable response to the military judge's question. Officer RF accurately explained the otherwise curious fact that although Appellant had enough hair nine days prior for

13

the agent to request a sample, once the agent received the necessary authorization to demand a sample, he was unable to secure any hair. Similarly, Officer RF's knowledge of Appellant having already secured a lawyer was not necessarily presented as evidence of guilt by Officer RF, but rather was made in direct response to the military judge's inquiry as to the agent's omission of what seemed an obvious and necessary question: asking the recently hirsute Appellant why he no longer had any hair.

These statements are the most problematic of the witness statements at issue. In particular, the military judge's questioning of Officer RF raises concern. On the one hand, given what was already known to the court at the time of the question -- that Appellant had asked for a lawyer and had refused to provide a hair sample -- the military judge ought to have been on notice that his question to the officer about why he had not made further inquiry of Appellant would have been likely to elicit a response referencing Appellant's invocation of rights. And, indeed, the question did in fact directly elicit a response that improperly referenced Appellant's exercise of his constitutional protections. On the other hand, Appellant did not object to the military judge's inquiry, and the lower court found that these statements fell within the res gestae rubric as well. Finally, the witness was careful not to

use the military judge's question to suggest an improper inference from Appellant's actions.

As with the other witness statements, we need not and do not ultimately decide whether the admission of Officer RF's statements was error, for we conclude in Section V that if the admission of these statement was error of any type, it was harmless beyond a reasonable doubt.

III.  Implied Consent -- Testimony of Officer JF

Officer JF was the Gulfport policeman who investigated Appellant's off-base car accident.  At the scene of the accident, Officer JF detained Appellant under suspicion for driving under the influence and escorted Appellant to a local hospital for medical care.  Officer JF testified regarding the drunk driving charge and was asked on direct examination about his attempts to secure a blood sample from Appellant to test for intoxication.

> [TC:]  Okay.  Now what happened when you got to the hospital?
>
> [JF:]  I offered him a consent form [to draw his blood] because the hospital requires some form of written verification that he is giving the samples, at which time he refused to sign it.
>
> [TC:]  Okay.  What did you do then?
>
> [JF:]  I contacted Judge Richard Smith, advised him of the circumstances over the telephone, was told to come to his house, which I did.  While at the hospital, I filled out the search warrant with his information.  I then went to Judge Smith's

> house, affirmed to the affidavit.  The warrant
> was signed, and I returned back to the hospital.

[TC:]  Okay.  What happened when you got there?

[JF:]  I made contact with the RN, and the blood draw
was administered.

On cross-examination, the defense counsel asked the witness to provide more details about the events at the hospital.

[DC:]  And how long were you in the emergency room with
him [Appellant] before you left to see Judge
Smith?

[JF:]  Probably -- I couldn't even give you a time.  It
-- it was -- I was with him enough time to talk
to him, for him to tell me that he would refuse
the [blood] test.

Appellant contends that the testimony regarding his refusal to consent to have his blood drawn implicated his Fourth Amendment right to be free from warrantless searches and seizures.  Under Mississippi law, in the case of a driver who refuses to consent to have his blood drawn, "evidence of [his] refusal shall be admissible in any criminal action . . . ." Miss. Code Ann. § 63-11-41 (1972).  The United States Supreme Court has upheld the doctrine of implied consent, which as a general matter is recognized in military case law as well.  See South Dakota v. Neville, 459 U.S. 553, 566 (1983) (upholding a state statute allowing evidence of refusal to submit to a blood alcohol test as admissible at trial to show evidence of driving under the influence; consent for the test was implied by the

accused's entry onto the state's motorways); Ricks v. State, 611 So. 2d 212, 216 (Miss. 1992) (upholding the Mississippi implied consent statute). Regarding military references to implied consent compare United States v. Armstrong, 9 M.J. 374, 383 (C.M.A. 1980) (stating that "any applicable requirements of . . . 'implied consent' . . . were met") with United States v. Pond, 36 M.J. 1050, 1057 (A.F.C.M.R. 1993) (holding that the use of an appellant's initial refusal to undergo a urine test was improper, notwithstanding the state's implied consent law, because "the California deputy did not follow the terms of the California implied consent statute").

Nonetheless, here too we decline to reach the ultimate question presented. In spite of having invited further briefs on the issue of implied consent we are left with only a passing reference to the doctrine in a somewhat dated opinion of this Court. Missing from Armstrong is a thorough discussion of several important questions such as the current propriety of applying a state implied consent statute to the military or the applicability of the federal implied consent statute, 18 U.S.C. 3118 (2000).[6] This is an important issue which may in the future prove case determinative.

---

[6] This statute allows for the prosecutorial use of a defendant's refusal to consent to a chemical test "in any case arising" from the incident. 18 U.S.C. § 3118(b).

17

Although we could pursue further development of this issue, principles of judicial economy and justice argue for resolving this case at this time if we can in order to negate further appellate delay. As a result, for the purpose of this case alone we will assume without deciding that the admission of Officer JF's statement was error of constitutional dimension. Thus, we consider whether the assumed error was harmless beyond a reasonable doubt. Alameda, 57 M.J. at 199.

On the one hand, the members may have inferred from Appellant's exercise of his constitutional rights that he had a guilty conscience. Appellant was aware he was inebriated and the members might well infer that he had no reason to decline consent to draw blood absent innate knowledge that he would test over the legal limit. On the other hand, the evidence against Appellant was otherwise overwhelming. A badly damaged vehicle registered in Appellant's name was discovered at the accident scene. Appellant was observed at the scene of the accident two feet from the driver's door, suffering injuries to his legs, having trouble getting to his feet, and acting in an inebriated manner. Finally, Appellant's blood was lawfully drawn as a result of the warrant obtained from Judge Smith, which indicated a blood alcohol level of .25 percent ethanol. Based on this evidence we are persuaded that if there was error in admitting

18

officer JF's statement, it was harmless beyond a reasonable doubt.

IV.  Trial Counsel's Comment

In the closing part of his findings argument to the members, trial counsel turned his attention to evidence in support of the allegations of drug use and distribution.  He stated the following:

> [TC:]  Now these drug charges.  What's probably certainly close to the some of the most damning evidence that you have in this courtroom today is the fact that on March 20th he is called into [the] investigations [office] . . . .  The OSI says, "We would like to take your hair."  He says, "No, thank you.  I want to speak to my attorney first."

Emphasis added.

This statement was error, and the error was obvious.  Trial counsel's argument was improper because it was an inaccurate characterization of the testimony presented, and it improperly referenced Appellant's exercise of a constitutional right and suggested, intentionally or not, that the members infer guilt from the invocation of that right.

This Court has held that "'it is improper for a prosecutor to ask the court members to infer guilt because an accused has exercised his constitutional rights.'"  United States v. Gilley, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting United States v. Carpenter, 51 M.J. 393, 396 (C.A.A.F. 1999)).  An argument by

19

trial counsel "which comments upon an accused's exercise of his or her constitutionally protected rights is 'beyond the bounds of fair comment.'"  United States v. Edwards, 35 M.J. 351, 355 (C.M.A. 1992) (finding that it is improper for counsel to comment on accused's refusal to plead guilty) (citation omitted); see also United States v. Toro, 37 M.J. 313, 318 (C.M.A. 1993) (finding that it is improper for trial counsel to comment on an accused's exercise of his right to remain silent); United States v. Clifton, 15 M.J. 26, 29 (C.M.A. 1983) (finding that it is improper for trial counsel to argue that the fact that the accused "asserted his rights" and "fought this every inch of the way" was indicative of his guilt).

A trial counsel's statement implicating an accused's assertion of his rights is not per se impermissible.  See United States v. Moore, 917 F.2d 215, 225 (6th Cir. 1990); United States v. Milstead, 671 F.2d 950 (5th Cir. 1982).  In context, it may appropriately be made in rebuttal.  See, e.g., Edwards, 35 M.J. at 355.  Additionally, if a statement "was an isolated reference to a singular invocation of rights" it may be harmless in the context of the entire record.  United States v. Sidwell, 51 M.J. 262, 265 (C.A.A.F. 1999) (citing United States v. Garrett, 24 M.J. 413, 416-17 (C.M.A. 1987)).  As a result, this Court examines prosecutorial comment "within the context of the

entire court-martial." United States v. Baer, 53 M.J. 235, 238 (C.A.A.F. 2000).

Turning to the statement in question, the first problem is that it is not a correct restatement of the evidence. There is no evidence that, upon being initially asked to surrender a hair sample, Appellant invoked his Fifth Amendment right to counsel as trial counsel had suggested. Special Agent TWB testified: "Initially we tried consent. And he didn't consent to the -- us taking -- using -- collecting body hair."

The second problem is that read in its most natural light, trial counsel's statement about Appellant's request for counsel was not simply hortatory. Rather, it appears demonstrably designed to exploit Appellant's rights invocation, directly linking Appellant's reliance on his rights with his likely guilt.

As such, this statement was "'beyond the bounds of fair comment,'" Edwards, 35 M.J. at 355 (citation omitted), and the military judge erred in allowing it without a curative instruction. By arguing that the accused's invocation of his right to counsel was substantive evidence of his guilt, the statement violated Appellant's Fifth Amendment rights, M.R.E. 301(f)(3), and Rule for Courts-Martial (R.C.M.) 919, which sets forth the permissible content of trial counsel's argument on

21

findings.[7]  In our system of justice, the exercise of the right to counsel is proof of neither guilt nor innocence.

## V.  Prejudice

   Having concluded that the trial counsel erred during his closing argument, we must now determine whether the error materially prejudiced Appellant's substantial rights with respect to Appellant's convictions for using and distributing drugs.  We do so cognizant that the error in closing argument occurred in the context of certain witnesses' statements, which we, in turn, assume without deciding might have been erroneously admitted.  Thus, we must assess the prejudicial impact of these assumed errors as well.  In addition, we assume in the context of the drunk driving offense that Appellant's refusal to consent to the seizure of his blood should not have been presented to the members, but we have already concluded above that any error there was harmless beyond a reasonable doubt.

   "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  Chapman v. California, 386 U.S. 18, 24 (1967).  This will depend on "'whether there is a

---

[7] In its Discussion, R.C.M. 919 states that "[t]rial counsel may not comment on the accused's exercise of the right against self-incrimination or the right to counsel."  This Court has noted that "Although not binding, the Discussion reflects applicable judicial precedent."  United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005).

reasonable possibility that the evidence [or error] complained of might have contributed to the conviction.'" Id. (citation omitted). "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous." Yates v. Evatt, 500 U.S. 391, 403 (1991), overruled on other grounds by Estelle v. McGuire, 502 U.S. 62, 72 n.4 (1991). It is, rather, "to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." Id. For the reasons stated below, we conclude that trial counsel's comments during argument and any of the other assumed errors were harmless beyond a reasonable doubt.

First, we conclude that the prejudicial impact of trial counsel's comments was dampened by the minor part they played in the midst of a nineteen-page argument. We are cognizant that comments by trial counsel -- read apart from a much longer argument and without the context of the trial setting -- might appear more egregious when examined on appellate review than they actually were when made during the trial.

Second, other evidence supporting the drug convictions that was properly admitted was sufficient to dispel any notion that the contested witness statements and trial counsel's comments

23

"tipped the balance" against Appellant.  Compare United States v. Berry, 61 M.J. 91, 98 (C.A.A.F. 2005).

Appellant's convictions of the drug offenses were supported by evidence provided by six witnesses who testified against him. Five of theses witnesses presented evidence of his ecstasy use, four of them testified regarding his LSD use, and four testified regarding his cocaine use.

Appellant argues that the value of this testimony is suspect as the witnesses were "dirty."  These witnesses had been involved with drugs and had either been court-martialed or were awaiting trial when they appeared.  Further, at least two of the witnesses were testifying under requirements imposed by their plea agreements and at least one was granted testimonial immunity for his testimony against Appellant.  While the witnesses' criminal pasts and the circumstances under which they testified may have affected their credibility, it is axiomatic that credibility determinations are within the province of the members.  The very reason that witnesses are cross-examined is "to test their assertions for accuracy, bias, conflict of interest, or other reasons to discount or disbelieve their testimony."  Rockwood, 52 M.J. at 103.

Further, we note that the circumstances under which the witnesses appeared were not obscured from the members.  Defense counsel's cross-examination brought to light the criminal

24

history of the witnesses, the particulars of the agreements each had struck with the Government prior to appearing, and competently attacked their credibility generally. Moreover, each witness testified regarding a different use of drugs by Appellant. In assessing the credibility of these witnesses, the members would have to assess not just the possibility that six witnesses might finger Appellant to improve their situations, but that six witnesses would independently decide to do so by describing six different instances of drug use.

Third, there is substantial, and arguably novel, circumstantial evidence regarding Appellant's consciousness of guilt that was properly before the members, namely evidence that Appellant shaved his body hair -- all of his body hair -- which prevented the Government from testing his hair for drug use. In particular, the evidence demonstrates that at some point after learning that investigators wished to procure a hair sample from him to test for the drug use alleged under Charge III, Appellant shaved off all of his hair. An inference of guilt stemming from Appellant's shaving was permissible under the "consciousness of guilt" doctrine. There exists longstanding precedent that, while such behavior may not give rise to a presumption of guilt, it nonetheless can, within certain constraints, be entered into evidence and commented upon. See, e.g., United States v. Cook, 48 M.J. 64, 66 (C.A.A.F. 1998); United States v. Johnson, 6

25

C.M.A. 20, 24, 19 C.M.R. 146, 150 (1955); United States v. Buchana, 19 C.M.A. 394, 397, 41 C.M.R. 394, 397 (1970) (evidence of "consciousness of guilt" -- such as an accused's flight from the scene of a crime -- is admissible).

Moreover, the effect of Appellant shaving his body in this case was essentially the destruction of evidence. That "an inference of consciousness of guilt can be drawn from the destruction of evidence is well-recognized in the law." Haemonetics Corp. v. Dupre, 238 B.R. 224, 228 n.10 (D. Mass. 1999); see also Sullivan v. General Motors Corp., 772 F. Supp. 358, 360 (N.D. Ohio 1991) (citing State v. Strub, 355 N.E. 2d 819, 825 (Ohio Ct. App. 1975)); United States v. Howard, 228 F. Supp. 939, 942 (D. Neb. 1964).

Based on the foregoing, we are "convinced that independent evidence of [A]ppellant's guilt was overwhelming," a conclusion that renders any errors, assumed or otherwise, harmless beyond a reasonable doubt.

### DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

26

United States v. Moran, No. 06-0207/AF

EFFRON, Chief Judge (concurring in part and in the result):

I concur in the majority opinion except for that portion of Section III that discusses implied consent.  See United States v. Moran, 65 M.J. ___ (3) (C.A.A.F. 2007) (Erdmann, J., concurring in the result).

ERDMANN, Judge (concurring in the result):

I agree with the ultimate resolution in this case: assuming that the references by witnesses and trial counsel to Moran's invocation of his constitutional rights were plain error, any such errors were harmless beyond a reasonable doubt. I write separately, however, as I do not join in those portions of the majority opinion that address issues not necessary to reach that result.

Despite the "if error, harmless" resolution, the majority suggests that the admission of statements about Moran's invocation of rights may have been admissible. I certainly recognize that in some cases, testimony about a defendant's invocation of rights may be admissible. However, routine disclosure of the fact that an accused has asserted his constitutional rights should not be sanctioned under the guise of setting forth a chronology of events or merely to establish the "res gestae" of an offense. The rules dealing with admissibility of assertions of constitutional rights are rules of prohibition. See, e.g., Military Rule of Evidence (M.R.E.) 301(f)(1); United States v. Gilley, 56 M.J. 113, 120 (C.A.A.F. 2001) (assertion of Fifth Amendment rights generally inadmissible); United States v. Turner, 39 M.J. 259, 262 (C.M.A. 1994) (refusal to consent may not be considered as evidence of

criminal conduct). Exceptions to these rules of prohibition are carved out of unique circumstances not present in this case.

In this case, any relevance that might be ascribed to Moran's assertions of rights is substantially outweighed by the risk that the members, without guiding instruction from the military judge, would use that evidence to improperly infer guilt or consciousness of guilt.

> It is the well-settled law of this Court that it is improper to bring to the attention of the triers of fact that an accused, upon being questioned on an occasion prior to trial, asserted his rights to counsel or to remain silent. . . . This principle is founded upon the open-eyed realization that to many, even to those who ought know better, the invocation by a suspect of his constitutional and statutory rights to silence and to counsel equates to a conclusion of guilt -- that a truly innocent accused has nothing to hide behind assertion of these privileges.

United States v. Riley, 47 M.J. 276, 279 (C.A.A.F. 1997) (quoting United States v. Moore, 1 M.J. 390, 391 (C.M.A. 1976)); see also M.R.E. 403 (excluding relevant evidence where "probative value is substantially outweighed by the danger of unfair prejudice").

The record of trial presents nothing suggesting that evidence relating to Moran's refusal to consent to giving a hair sample or evidence reflecting that Officer RF did not ask why Moran shaved his body because Moran had previously asserted his right to counsel were critical components of the Government's case or even necessary to give context to other evidence. Given

2

the ultimate resolution of this case, speculation as to why these references to Moran's assertions of rights may have been admissible is simply not necessary. I therefore do not join that portion of the majority opinion that discusses alternative theories of admissibility.

For similar reasons I do not join that portion of the majority opinion discussing implied consent or the admissibility of refusal to consent to blood extraction under state implied consent laws. This case does not deal with implied consent: Officer JF testified that once at the hospital he "offered [Moran] a consent form [for the blood test] because the hospital requires some form of written verification that he is giving the samples, at which time he refused to sign it." There was no testimony or evidence relating to any Mississippi requirement for consent under state law. In addition, the Military Rules of Evidence have no exception for admitting refusal to consent under state implied consent laws. Thus, Miss. Code Ann. § 63-11-41 (1972) is not relevant to this case. Again, I decline to join in the speculation as to what circumstances, not present in this case, might support admissibility of Moran's refusal to sign a consent form.

I concur in the result.