# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Airman First Class JAMES M. BOORE
## United States Air Force

## ACM 38058 (recon)

## 21 August 2014

Sentence adjudged 9 September 2011 by GCM convened at Joint Base Lewis-McChord, McChord Field, Washington. Military Judge: Martin T. Mitchell.

Approved sentence: Bad-conduct discharge, confinement for 6 months, and reduction to E-1.

Appellate Counsel for the appellant: Major Nicholas D. Carter and Captain Luke D. Wilson.

Appellate Counsel for the United States: Lieutenant Colonel Katherine E. Oler; Lieutenant Colonel C. Taylor Smith; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

PER CURIAM:

A general court-martial composed of officer members convicted the appellant, contrary to his pleas, of one specification of providing alcohol to minors and one specification of abusive sexual contact with JG, who was substantially incapacitated, in violation of Articles 92 and 120, UCMJ, 10 U.S.C. §§ 892, 920. The adjudged and approved sentence was a bad-conduct discharge, confinement for 6 months, and reduction to E-1.

*Procedural History*

On 25 January 2013, The Judge Advocate General of the Air Force appointed Mr. Laurence M. Soybel to the position of appellate military judge on the Air Force Court of Criminal Appeals pursuant to Article 66(a), UCMJ, 10 U.S.C. § 866(a).  At the time of this appointment, Mr. Soybel, a retired Air Force officer and former appellate military judge, was serving as a civilian litigation attorney in the Department of the Air Force.  On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals."  Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning (25 June 2013).

When the appellant's case was initially before us, he raised two issues:  (1) the military judge abused his discretion in denying a motion for a mistrial after a witness commented on the appellant's invocation of his rights under Article 31, UCMJ, 10 U.S.C. § 831; and (2) the version of Article 120, UCMJ, in effect at the time of his trial was unconstitutional.[1]

On 7 May 2013, we issued a decision denying the appellant relief.  *United States v. Boore*, ACM 38058 (A.F. Ct. Crim. App. 7 May 2013) (unpub. op.).  Mr. Soybel was a member of the panel that decided the case.  Following Mr. Soybel's appointment by the Secretary of Defense on 25 June 2013, we reconsidered the decision sua sponte and on 12 July 2013 issued a new opinion.  *United States v. Boore*, ACM 38058 (recon) (A.F. Ct. Crim. App. 12 July 2013) (unpub. op.).  Mr. Soybel was again a member of the panel. On 13 September 2013, the appellant filed a petition for grant of review with our superior court.  *See United States v. Boore*, 73 M.J. 48 No. 14-0030/AF (Daily Journal 13 September 2013).  On 31 October 2013, our superior court dismissed the appellant's petition for review without prejudice and converted the appellant's motion to vacate, then pending before this Court, into a motion for reconsideration.  *United States v. Boore*, 73 M.J. 91 (C.A.A.F. 2013) (mem.).  On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the appellant's motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors.

---

[1]  The Article 120 offenses were charged under the version of Article 120, UCMJ, 10 U.S.C. § 920, contained in the National Defense Authorization Act for Fiscal Year 2006 (applicable to sex offenses committed during the period 1 October 2007 through 27 June 2012).

The appellant submitted a supplemental assignment of errors asserting: (1) he is entitled to relief due to excessive post-trial processing delays, and (2) the military judge abused his discretion by giving the members a false exculpatory statement instruction.[2] With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this Court. We affirm the findings and sentence.

*Background*

The appellant hosted a party at his home at which he provided alcohol to some of the underage guests. JG, a civilian who was not well-acquainted with the appellant, attended. During the course of the evening, the appellant asked JG about the marital difficulties she was experiencing. JG was surprised that the appellant knew about her relationship as she had not spoken to him about her personal affairs. During another conversation, the appellant told JG that he and his wife were "swingers." The appellant seemed to become irritated and frustrated when others came over to join their one-on-one conversations.

Later, JG played with the appellant's puppy and experienced an allergic reaction. The appellant's wife gave her Benadryl. Although the Benadryl ameliorated the allergic reaction, when coupled with the alcohol JG had been drinking, the medication made her flushed, overheated, dizzy, nauseated, and tired. The appellant's wife and one of JG's friends helped her onto a cot in a room of the appellant's house ordinarily used as a nursery and urged her to spend the night. The appellant's wife and JG's friend helped her put on a pair of pajama bottoms in addition to a shirt, camisole, and bra. JG then fell asleep; she later awoke naked from the waist up. Her tops and bra were folded in a pile on the floor, and her bra straps were connected. JG initially had no memory of how she had become naked or why her clothes were arranged as they were, but as the day went on, she recalled being awakened three times during the night.

The first time she awoke, she felt pressure on her body and someone else's mouth on hers. She tried to move away but was unable to do so. Someone opened the bedroom door, and with the light from the hallway, she saw the appellant leaning over her. She further recalled hearing the appellant's sister ask him what he was doing and his reply to her to "go away."

The second time she awoke, the appellant sat her up and pulled her tops off, then pulled her bra over her head and began kneading her breasts. Again, she was unable to move or resist.

---

[2] In his supplemental assignment of errors, the appellant provided additional argument in support of his original claim that the military judge erred in refusing to grant a mistrial. We have considered this additional argument in rendering our decision.

She remembered feeling cold the third time she awoke because the blanket was down below her waist. The appellant had his hand down her pajama bottoms, inside her underwear, and was rubbing the palm of his hand against her pubic area. At some point during this third encounter, the appellant's wife entered the room, confronted him, noticed that JG was naked, and told the appellant to get out of the room.

*Motion for Mistrial*

After receiving JG's allegations, Air Force Security Forces investigators interviewed the appellant. Detective (Det.) NU was one of the interviewers. The appellant initially waived his Article 31, UCMJ, rights and made verbal and written statements. When detectives asked the appellant two follow-up questions after reading his written statement, the appellant invoked his right to remain silent.

The military judge and counsel discussed the appellant's invocation of his rights and its impact on Det. NU's testimony, during a Rule for Courts-Martial (R.C.M.) 802 conference. On the record, the military judge summarized the discussion on that point as follows:

> Airman Boore had invoked his right to counsel during the questioning by the investigators and that the investigators were not to mention, in front of members, that Airman Boore had invoked his rights to counsel and that trial counsel was going to ensure that the investigators were aware of that limitation.

Det. NU testified at trial and explained the initial rights advisement process and the appellant's waiver. After describing the appellant's oral and written statements, the direct examination continued as follows:

> Q. And what actions did you take after you read [the appellant's statement]?
>
> A. I reviewed his statement and Detective C[] reviewed it and then we continued to push for more details as to what had actually gone on during the time period that the accused was alone with the victim.
>
> Q. And what kinds of questions were you asking?
>
> A. We asked him where exactly he was in the room, was he standing or kneeling. He indicated that he was kneeling next to the bed around the victim's chest area and head. We then asked if it was possible if he had touched the victim. He said it was possible that he had touched her. We

asked him how and where. At that point he took a deep breath and requested legal counsel.

Defense counsel immediately objected and the military judge sustained the objection, instructing the members as follows:

[MJ:] Airman Boore has [sic] an absolute right at any point during that interview to request legal counsel. The fact that he did so is not relevant to these proceedings and not admissible evidence and cannot be considered by you. Members, will you be able to follow that instruction and disregard that portion of the testimony?

[MJ:] An affirmative response by all members.

Trial defense counsel requested an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, during which they asked the military judge to grant a mistrial based on Det. NU's testimony, arguing no curative instruction would be sufficient to remove the taint of the statements. Trial counsel conceded that the witness's statements were inadmissible but argued that it was cured by the military judge's immediate corrective instruction. The military judge denied the motion for mistrial, stating:

I believe in this case, based off the members' responses, that the clarity of the military judge's instruction as well as their agreement that they will be able to follow the military judge's instructions that the curative instruction was such that it cured the error that was introduced by the reference to Airman Boore's election of counsel.

The military judge went further, however, and ordered the members to disregard not only the comment on the appellant's invocation of rights but also the testimony that the appellant admitted he may have touched the victim and hung his head after saying that. Additionally, the military judge prevented any additional direct examination of Det. NU. Finally, the military judge provided a second curative instruction to the members:

Members, let me further clarify the instruction I provided you earlier. Members, I earlier instructed you that you must disregard Airman Boore's election of counsel. Airman Boore has a Constitutional right to seek the advice of counsel. This evidence is inadmissible and may not be considered by you.

In connection with this, I have also sustained the objection to the last question and answer that resulted in the inadmissible testimony. I sustained

the objection to Special Agent [NU]'s [3] testimony regarding the question he asked Airman Boore regarding how or where he touched [the victim] and his response; this includes both Airman Boore's non-verbal and verbal responses. You must also disregard this portion of the testimony.

Before us, the appellant argues that the admission of this testimony was error and that the error was not sufficiently cured by the military judge's actions because (1) the military judge failed to question each court member individually to ascertain whether they understood and could follow his curative instruction, (2) the detective was the final witness called by the prosecution, and (3) the statement by the witness was made after the military judge had specifically reminded trial counsel that such evidence was inadmissible.

R.C.M. 915(a) vests military judges with the discretion to declare a mistrial when "manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." However, the discussion to the rule cautions that mistrials are to be used "under urgent circumstances, and for plain and obvious reasons." R.C.M. 915(a), Discussion. *See also United States v. Garces*, 32 M.J. 345, 349 (C.M.A. 1991) ("[M]istrial is a drastic remedy and is reserved . . . to prevent a miscarriage of justice."). Our superior court has noted that "[b]ecause of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action, such as giving curative instructions." *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009). "We will not reverse a military judge's determination on a mistrial absent clear evidence of an abuse of discretion." *Id.*

The Government concedes the mention of the appellant's invocation of his rights was error, and the error was of constitutional dimension. *See United States v. Sidwell*, 51 M.J. 262 (C.A.A.F. 1999). We agree.

We must now determine whether the error resulted in a miscarriage of justice requiring a mistrial. As this error was of constitutional dimension, we also must determine whether the error and the military judge's curative efforts rendered it harmless beyond a reasonable doubt. *See United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (citing *Chapman v. California*, 386 U.S. 18 (1967)). We must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963). When constitutional error is at issue, the Government must establish beyond a reasonable doubt that the error did not contribute to the verdict. *Neder v. United States*, 527 U.S. 1, 18 (1999); *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002). "To say that an

---

[3] By the time of trial, Detective NU had become a special agent with the Air Force Office of Special Investigations.

error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt*, 500 U.S. 391, 403 (1991), *clarified by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991). In *Harrington v. California*, 395 U.S. 250, 254 (1969), the Supreme Court stated the *Chapman* test for harmless error could be satisfied where there is overwhelming evidence of guilt. However, "[i]f, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . . it should not find the error harmless." *Neder*, 527 U.S. at 19. We analyze this witness's testimony in the context of the entire court-martial. *Moran*, 65 M.J. at 186.

Upon consideration of the entire record, we hold that the error was harmless beyond a reasonable doubt. The military judge took immediate corrective action by giving the members two curative instructions and received their agreement to disregard the improper testimony. The military judge again reminded them of this obligation at the close of the evidence. Absent evidence to the contrary, the "members are presumed to follow the military judge's instructions." *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000). We conclude the military judge's actions following the improper testimony adequately cured the error and rendered it harmless beyond a reasonable doubt. As such, a mistrial was not an appropriate remedy. *See United States v. Rushatz*, 31 M.J. 450, 456 (C.M.A. 1990) ("Giving a curative instruction, rather than declaring a mistrial, is the preferred remedy for curing error when court members have heard inadmissible evidence, as long as the curative instruction avoids prejudice to the accused.").

We are also convinced that independent evidence of the appellant's guilt was overwhelming, and that the panel's verdict would have been the same even if the error had not occurred. In addition to JG's testimony, the friend who invited her to the appellant's party testified that she saw the appellant talking to JG during the evening and that, whenever she approached their private conversation, the appellant would become "snippy" and tell her to go away. She confirmed that JG had ingested Benadryl and alcohol, and that she was "stumbling and completely incoherent" before going to bed wearing a shirt, a camisole, a bra, and pajama bottoms. She also saw the appellant stroking JG's thigh as JG lay on the cot. Other witnesses at the party corroborated the description of the appellant's interactions with JG. The appellant told one partygoer that JG was "pretty hot" and "really drunk." Another partygoer saw the appellant and his wife in a fight in the hallway outside the room in which JG was sleeping. Finally, the appellant's sister testified that she saw him in JG's room on three separate occasions and found it odd that he would be in there. She told the appellant's wife where the appellant was and, thereafter, the appellant's wife "bolted inside" and brought the appellant out of the room with her. Given this overwhelming proof, we conclude the error was harmless beyond a reasonable doubt. *See Moran*, 65 M.J. at 187.

*Instruction to Court Members*

Before findings at trial, the military judge issued the court members the standard Benchbook instruction regarding false exculpatory statements. *See* Department of the Army Pamphlet (D.A. Pam) 27-9, *Military Judges' Benchbook*, ¶ 7–22 (1 January 2010). The appellant argues the military judge abused his discretion in doing so.

Whether a military judge properly instructs the court members is a question of law we review de novo. *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003). A military judge's decision to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996). The *Benchbook* provides that a military judge may give the instruction for false exculpatory statements if the Government introduces evidence of an accused's false statement or a false explanation concerning an alleged offense and the Government contends that an inference of consciousness of guilt should be drawn from the evidence. D.A. Pam. 27-9, ¶ 7–22. However, an instruction for false exculpatory statement is not appropriate when the accused has made only a general denial, because a "general denial of guilt does not demonstrate any consciousness of guilt." *United States v. Colcol*, 16 M.J. 479, 484 (C.M.A. 1983). When the alleged false statement is merely a general denial of guilt, "the factfinder must decide the very issue of guilt or innocence" and the instruction would "produce confusion because of its circularity." *Id.*

In the present case, the military judge expressly considered *Colcol* and understood the impropriety of providing a false exculpatory statement instruction when there is only a general denial of guilt. In overruling the defense objection, the military judge specifically found, however, that statements made by the appellant to investigators "were more than a general denial of guilt and [were] potentially a false explanation as to the events of that evening." We agree.

The evidence at trial indicated that—beyond any general denial of guilt—the appellant made a number of statements to investigators the members might reasonably have found false. When asked by investigators about the party at his home, the appellant initially claimed, for example, that he "couldn't remember" JG or "any real details about her." This claim was belied by the many details the appellant could, later in the interview, remember about JG when doing so appeared to serve his own interest.

Likewise, when caught—alone and in the dark, behind a locked door of the nursery, in contact with the heavily intoxicated JG—the appellant offered specific explanations to investigators that the members could have found less than plausible. He claimed, for example, that he had simply been "checking on her," and he was leaving the room "because she was taking her clothes off."

We find the instruction in question was fairly raised by the evidence at trial, and the military judge did not abuse his discretion by giving it to the members.

*Constitutionality of Article 120, UCMJ*

The appellant next argues that he was deprived of his right to due process because the version of Article 120(c)(2), UCMJ, that applied to his conduct was unconstitutional and that the military judge erroneously instructed the members in a manner that did not employ the terms of the statute. The appellant now acknowledges, and we concur, that this issue has already been resolved adversely to his position by *United States v. Medina*, 69 M.J. 462 (C.A.A.F. 2011).

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id*. at 136; *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was docketed with this Court on 27 December 2011. Our initial decision in this matter was issued on 7 May 2013, within the 18-month standard set forth in *Moreno*. Upon reconsideration, however, this Court vacated the previous decision and issued its subsequent decision on 12 July 2013—more than 18 months after the case was first docketed for appeal. The overall delay of more than 18 months between the time of docketing and review by the Court is, therefore, facially unreasonable. As stated earlier in this opinion, our superior court recently decided that one of the judges who participated in that decision was not properly appointed, and subsequently the appellant's case remained in the appellate process. Accordingly, we have considered the appellant's case before a properly constituted panel and issue this decision.

We analyze the *Barker* factors for the delay leading up to our 12 July 2013 decision and find no due process violation resulted from the appellate delay. While the length of the delay and the reasons for the delay weigh in favor of the appellant, we find the appellant has not articulated any prejudice resulted from the delay. When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We find that the delay in issuing our decision, which came just days after the 18-month period expired, was not so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system.

The time between our superior court's action to return the record of trial to our Court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136. Furthermore, the reason for the delay between 12 July 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[4] to appoint civilian employees to the service courts of criminal appeals. Even assuming the total appellate processing of this case raises a presumption of unreasonable delay, we again conclude the delay was harmless under the *Barker* and *Toohey* analyses.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay, the length and complexity of the record, the offenses involved, and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find, for the reasons discussed above, there was no bad faith or gross negligence in the post-trial processing at any stage of the appellate review of this matter. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

---

[4] U.S. CONST. art II § 2, cl 2.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court