# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist WILLIAM J. GRIMES**
**United States Army, Appellant**

ARMY 20100720

Headquarters, V Corps
Wendy P. Daknis, Military Judge
Colonel Flora D. Darpino, Staff Judge Advocate

For Appellant: Captain Brian D. Andes, JA (argued); Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain John L. Shriver, JA (on brief).

For Appellee: Captain Chad M. Fisher, JA (argued); Lieutenant Colonel James L. Varley, JA; Captain Chad M. Fisher, JA; Major James E. Ewing, JA (on brief).

31 January 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent*

MARTIN, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of one specification of rape in violation of Article 120(a), Uniform Code of Military Justice, 10 U.S.C. § 920 (2006 & Supp. II 2009), *amended by* 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the dishonorable discharge, thirty-three months of confinement, and reduction to the grade of E-1.

Appellant's case is now before this court for review under Article 66, UCMJ. Of appellant's two assignments of error, one merits discussion, but neither merit

relief.[1]  This assignment of error relates to the military judge's denial of the defense motion to admit evidence of other sexual conduct by the victim.  *See* Military Rule of Evidence [hereinafter Mil. R. Evid.] 412.  We conclude the military judge did not abuse her discretion by excluding the Mil. R. Evid. 412 evidence.

## BACKGROUND

Appellant and the victim, Specialist (SPC) MT, were both assigned to the same military police company and lived in the same barracks in Germany.  Specialist MT arrived at the unit in July 2009, and appellant immediately befriended her.  Their relationship progressed quickly and they had three to four consensual sexual encounters over the summer, with the last being on 26 August 2009, SPC MT's birthday.  By that time, both appellant and SPC MT started dating other people, and they agreed that they should just be friends.  Although they continued to speak, exchange text messages, flirt, and kiss, they no longer maintained a sexual relationship.

Testimony also revealed that SPC MT's boyfriend did not care for appellant and did not want SPC MT to continue her friendship with appellant.  Specialist MT used a false name in her cellular phone contact list for appellant in order to hide the fact that she was communicating with appellant from her boyfriend.

All but one of the consensual sexual encounters occurred before morning physical training (PT) formation in appellant's barracks room.  Due to time constraints, SPC MT characterized the sex as "pretty much rough and fast."  She further testified that she was up against the wall or face down, and appellant penetrated her vagina from behind.  On at least one occasion, SPC MT told appellant "no," prior to the intercourse, but stated that she did not mean it, and said it in a moaning, heat of the moment, type of way.  During the course of their sexual relationship, appellant would send a text message to SPC MT in the early morning hours prior to PT formation, inviting her to his room to "talk."  In this context, SPC MT stated that "talk" was a euphemism for sex.

During one of the earlier sexual encounters, appellant invited SPC MT over to his barracks room in the evening to watch movies.  Specialist MT spent the evening in appellant's room, and although they engaged in consensual sexual intercourse, SPC MT did not characterize this instance as rough or fast.  Instead, as she started to

---

[1] We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982), and we find they warrant no discussion or relief.

fall asleep while watching a movie, appellant touched and caressed her, she awakened, and they had sex.

On 7 October 2009, appellant and SPC MT exchanged over fifty text messages throughout the day. Specialist MT stated that at least one of the text messages could have stated "we could talk," or words to that effect. They also discussed the fact that they would have time to talk after her boyfriend left for training. Her boyfriend departed for training on 6 October 2009. After the duty day, SPC MT returned to her room to shower. Appellant visited with her in her room and they talked. She told him she intended to take a sleeping pill and go to bed early. He left, and she took the sleeping pill and dozed off as she watched a movie. Specialist MT's roommate had duty as charge of quarters, and they agreed to leave the door unlocked so that the roommate could come and go into the room quietly throughout the night. Appellant, who lived in the same barracks, returned to the unlocked room to borrow something and left. A little while later, SPC MT awoke to appellant tugging at her pajama pants. She told him to "knock it off," assuming he was teasing her when he remarked "do you know what I could do to you right now?" Specialist MT then went back to sleep on her back. She woke up feeling herself being turned from her back to her stomach, and then felt her chest being pushed against the bed. She then felt herself being penetrated from behind. Specialist MT testified that she felt confused and a lot of pressure on her back so that she could not move. Specialist MT stated that she said "No. Stop. Knock it off. Quit it. Get off me." She started to cough and gag and the penetration stopped. Specialist MT stated that she rolled over and realized the person behind her was the appellant. He then asked her "Why do you always got to fight me?" SPC MT responded "because I can." Appellant then left the room.

SPC MT called several family members asking for their advice on how to proceed. She then sent a text to appellant accusing him of rape. In a series of fairly incriminating text messages, appellant apologized for his behavior, but stopped short of admitting his actions constituted rape. Specialist MT reported the incident to her chain of command the next morning.

SPC MT deleted many of the text messages between herself and appellant and the forensic examiner was unable to recover the deleted messages. She explained that her prepaid cell phone did not have a large memory, and she periodically was required to purge her old messages. The forensic examiner also testified that this phone had a flash memory that only held a limited amount of data, and it is common for a user to be required to purge messages periodically. Specialist MT did, however, save the messages from later in the afternoon of 7 October, through the morning of 8 October 2009.

The defense made several pre-trial motions, including a motion under Mil. R. Evid. 412(b), notifying the court of their intent to offer evidence of SPC MT's

sexual behavior.  They specifically requested that the military judge allow the following evidence regarding the prior, sexual relationship between appellant and SPC MT:

1. SPC MT  and appellant had consensual, rough sex on multiple prior occasions in which she was face down and he penetrated her vagina from behind;

2. During these consensual sexual encounters, SPC MT sometimes used the word "no" when she actually meant "yes";

3. During these consensual, rough sexual encounters, SPC MT "weaseled away" and "moved herself";

4. Appellant and SPC MT often used the word "talk" as a euphemism for sex, and earlier in the day of the alleged rape, SPC MT and appellant agreed to "talk" later that evening; and

5. During the motion hearing, the defense also requested the military judge allow evidence of SPC MT's dating relationship with another soldier.

The military judge conducted a closed hearing and afforded the victim the opportunity to attend in accordance with Mil. R. Evid. 412(c).  Specialist MT attended the hearing and testified.  Appellant did not testify on the motion or during the merits portion of the court-martial.

After the hearing, and well before trial, the military judge provided extensive written findings of fact and conclusions of law, carefully parsing out which evidence could be introduced by the defense, and which would be barred by Mil. R. Evid. 412:

1. Evidence of prior sessions of consensual, rough sex with appellant (also referred to as "common practice of movements and positions") were not relevant to whether appellant mistakenly believed that SPC MT consented to sexual intercourse and was not admissible.

2. Evidence that SPC MT had previously told appellant "no" in the course of their consensual sexual encounter was relevant, material, and favorable to the defense and was admissible.

3. Evidence that SPC MT "weaseled away" and "moved herself" during consensual sexual encounters was not admissible because the defense failed to establish the factual foundation for this evidence, and mischaracterized SPC MT's Article 32 testimony.

4. Evidence that appellant and SPC MT often used the word "talk" to mean get together to have intercourse was relevant, material, and favorable to the defense and was admissible to show both consent and mistake of fact as to consent.

5. Evidence that SPC MT had a dating relationship with another soldier was admissible because there was no discussion of sexual details that would implicate Mil. R. Evid. 412, and was admissible under Mil. R. Evid. 608(c).

The military judge revisited her pretrial ruling during the trial and supplemented and revised the ruling during subsequent Article 39(a), UCMJ sessions.

## LAW

"[E]vidence offered by the accused to prove the alleged victim's sexual predispositions, or that she engaged in other sexual behavior, is inadmissible, except in limited contexts. [Mil. R. Evid.] 412(a)–(b). The rule is intended to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to [sexual offense prosecutions]." *United States v. Ellerbrock*, 70 M.J. 314, 317–318 (C.A.A.F. 2011) (quoting *United States v. Gaddis*, 70 M.J. 248, 252 (C.A.A.F. 2011)) (third alteration in original) (internal quotation marks omitted). However, Mil. R. Evid. 412(b) provides several exceptions to this general rule of inadmissibility:

(b) *Exceptions.*

(1) In a proceeding, the following evidence is admissible, if otherwise admissible under these rules:

(A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

(C) evidence the exclusion of which would violate the constitutional rights of the accused.

The rule further prescribes the procedure by which the military judge must evaluate the proffered evidence. *See* Mil. R. Evid. 412 (c)(2). After conducting a

closed hearing, the military judge must determine whether the evidence meets one of the stated exceptions. *See* Mil. R. Evid. 412(c)(3). Relevant evidence is any evidence that has "any tendency to make the existence of any fact . . . more probable or less probable than it would be without the evidence." [Mil. R. Evid.] 401.

> If evidence is material and relevant, then it must be admitted when the accused can show that the evidence is more probative than the dangers of unfair prejudice. *See* [Mil. R. Evid.] 412(c)(3). Those dangers include concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)].

*Ellerbrock*, 70 M.J. at 318–19.

While cross examination of a witness is a critical component of an accused's Sixth Amendment right to confrontation, "an accused is not simply allowed 'cross examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Id.* at 318 (quoting *Van Arsdall*, 475 U.S. at 679 (1986)). "'Trial judges retain wide latitude' to limit reasonably [an accused's] right to cross examine a witness 'based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (quoting *Michigan v. Lucas*, 500 U.S. at 149 (1991)) (internal quotations omitted).

"We review a military judge's ruling on whether to exclude evidence pursuant to [Mil. R. Evid.] 412 for an abuse of discretion. *United States v. Roberts*, 69 M.J. 23, 26 (C.A.A.F. 2010). Findings of fact are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo." *Id.* at 317.

## DISCUSSION

In the military judge's written ruling entitled, *Essential Findings of Fact, Conclusions of Law, and Ruling on Defense Notice of Intent to Introduce Evidence Under Mil. R. Evid. 412*, the military judge outlined the exceptions to the rule. First, the judge addressed the exception regarding specific instances of sexual behavior by the alleged victim with respect to the accused in accordance with Mil. R. Evid. 412 (b)(1)(B). The judge also discussed the exception when evidence is otherwise constitutionally required under Mil. R. Evid. 412(b)(1)(C). The judge noted that evidence must be relevant, material, and favorable to the defense. *See e.g. United States v. Williams*, 37 M.J. 352, 359 (C.A.A.F. 1993). Additionally, the evidence must be relevant to the defense's theory of the case. *See United States v. Velez*, 48 M.J. 220, 228 (C.A.A.F. 1998). Finally, the defense must establish an adequate foundation that the alleged "other sexual behavior" occurred. *See United States v. Carter*, 47 M.J. 395 (C.A.A.F. 1998). The judge's ruling is not a denial of

admissibility because of the danger of unfair prejudice to the alleged victim's privacy.[2]

Specialist MT provided sworn testimony affirming most of the assertions made by the defense in their Mil. R. Evid. 412 motion, and the military judge found that the factual foundation was established for all but one act of sexual behavior by SPC MT. Specifically, the military judge found that although the defense asserted that SPC MT "weaseled away" or "moved herself" during prior consensual sexual intercourse with appellant, in actuality, SPC MT testified that it was not a routine practice for her to move away from appellant during intercourse, but she had the freedom to move *if* she felt uncomfortable and needed to reposition herself.

The military judge ruled that the defense could offer evidence of SPC MT's prior consensual sexual relationship with appellant, including evidence that she previously told appellant "no" when she actually meant "yes" during intercourse, and that it was common practice during their sexual relationship to use the code word "talk" when they actually intended to have sexual intercourse. The military judge also ruled the defense could introduce evidence that SPC MT was in a dating relationship with another soldier at the time of offense. The judge denied the defense motion to introduce further details of the sexual relationship, to include any mention of "common practice of movements and positions," and found this aspect of their sexual relationship was not relevant to whether appellant was mistaken as to her consent to sexual intercourse on the evening in question.

After the court-martial began, and the parties developed the evidence further, the defense counsel raised the Mil. R. Evid. 412 issue on other occasions and asked for clarification. First, after the government completed their direct examination of the victim, the defense requested the military judge reconsider her ruling regarding prior sexual positions between appellant and SPC MT. Specifically, the defense asked if they could cross-examine SPC MT on whether or not the particular position alleged was substantially similar to their previous sexual positions. The military judge ruled that the sexual position during previous sexual encounters was not relevant. Later, after the victim completed her testimony and panel members raised

---

[2] During the motion session and Article 39(a) sessions during trial, both the defense counsel and trial counsel mentioned the victim's privacy concerns, either directly or indirectly, on several occasions. However, the military judge never stated that her decision was based on anything other than relevance or lack of factual foundation. *See United States v. Gaddis*, 70 M.J. 248 (C.A.A.F. 2011); *United States v. Ellerbrock*, 70 M.J. 314 (C.A.A.F. 2011) (expressing concern that the balancing test from Mil. R. Evid. 412(c)(3) overemphasizes the victim's right to privacy over the constitutional protections provided to an accused).

questions regarding whether the prior sex was "rough" or "gentle," the judge revisited her earlier ruling and determined that she would not allow evidence that the victim characterized some of the previous sexual encounters as "rough." However, the military judge did allow the question of regarding whether or not SPC MT resisted during previous sexual encounters. In so doing, the military judge distinguished resistance from forcefulness, and during an Article 39(a), UCMJ session, reiterated her earlier ruling that relevant Mil. R. Evid. 412 evidence was limited to what occurred prior to the actual penetration and intercourse.

As a matter of burdens, we note it is incumbent on the defense to show the proferred evidence is relevant. *See Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Further, "as a rule of exclusion, the burden of demonstrating why the general prohibition of Mil. R. Evid. 412(a) should [be] lifted" is on appellant. *Roberts*, 69 M.J at 27; *see* Mil. R. Evid. 412(c). In *Ellerbrock*, our superior court reminded us that when determining if evidence is relevant, "common sense is the guiding principle" and further observed that "determinations of relevancy must be based on 'personal experience, general knowledge, and understanding of human conduct and motivation.'" *Ellerbrock*, 70 M.J. at 319 (quoting 1 Kenneth S. Broun, et al., *McCormick on Evidence* § 185 (6th ed. 2006)).

In this case, the only evidence the military judge had before her was the sworn testimony of the victim, SPC MT. Appellant did not testify at trial, nor did he testify for the purposes of the Mil. R. Evid. 412 motion hearing.[3] As such, he did not provide any additional support for the assertion that sexual position was relevant to SPC MT's consent to engage in sexual activity or was relevant to his mistake of fact as to her consent. While defense counsel argued that the "panel would be predisposed to believe that rough sex from behind, along with 'weaseling away' and saying 'no' are the hallmarks of a non-consensual sexual encounter," the evidence

---

[3] The appellant provided a signed, unsworn statement in camera and under seal in support of his motion to sever this case from similar charges against other alleged victims. In the document, he asserted that he intended to testify that based on their previous sexual relationship, he believed that SPC MT wanted to engage in sexual intercourse with him on the evening in question, and that she displayed behaviors that were consistent with prior sexual intercourse, "which consisted generally of rough sex." The defense never linked this document to the Mil. R. Evid. 412 motion, and the military judge never referenced the document in her Mil. R. Evid. 412 rulings.

presented never supported how specific details of the common positions used in previous consensual sexual encounters related to consent for the charged incident.[4]

The evidence before the panel consisted of testimony that prior sexual encounters, all occurring on or before 26 August 2009, occurred in appellant's barracks room, the victim fully consented to sex and, in fact, went to his room for the express purpose of having sex. Specialist MT testified that she was fully awake during those earlier instances of sexual intercourse. Furthermore, all of those occasions started with kissing, and all but one of those encounters occurred in the morning before first formation. Appellant never asserted how the facts and behaviors leading up to the point of alleged consent for the charged incident were similar to the previous encounters. Instead, the undisputed evidence relating to the evening of 7 October 2009 was that the victim was tired after a long duty day and had clearly stated she was not interested in sexual activity with appellant on that night. She told him she took a sleeping pill in order to help her sleep, and he told her to "sleep well," and left the room.[5] She fell asleep in her own room, in her own

---

[4] The dissent argues that through the victim's testimony, the government made relevant the sexual positions during prior sexual encounters between SPC MT and appellant. However, the dissent fails to acknowledge the government must prove the essential elements of the charged offense. Here, appellant was charged with rape by force. The government must describe the force with sufficient specificity to meet its burden. There is no evidence the government overplayed their hand or otherwise overemphasized the position of the victim and the appellant such that it necessitated a discussion by the defense of the specific details of their previous, consensual sexual meetings. Indeed, if the mere mention of how an accused used force in order to penetrate a victim opened the door to all the particulars of prior sexual relationships, it would completely eviscerate the rationale for Mil. R. Evid. 412, and more importantly, the applicability of Mil. R. Evid. 401, 403, and 412 to sexual assault prosecutions.

[5] Evidence at trial showed that the victim was prescribed 50 milligrams of Trazodone, a commonly prescribed sleeping aid for soldiers. An expert for the defense testified that unlike other sleeping aids, Trazodone does not cloud the user's mental state, instead it only makes the user drowsy. The expert further testified that based on the type of medication and dosage ingested, the victim should have been able to awaken without difficulty and it should not have prevented her from understanding the nature of the alleged interactions with appellant on the night in question. Therefore, while the fact that the victim ingested a sleeping pill was important to the government's argument that she did not consent to sex with appellant on the evening in question, the sleeping aid was not used to demonstrate

(continued . . .)

bed, at night. Finally, unlike every other prior consensual sexual encounter, there was no kissing or any other foreplay prior to the sexual intercourse. All the remaining evidence that supported the defense theory regarding SPC MT's sexual behavior as it related to her consent to begin or continue sexual activity was admitted through the victim and was before the panel. This evidence was very damaging to the government case and included information that earlier in the day, they had texted about the possibility of "talking later," they texted about having time to talk after her boyfriend left for training; the fact that her boyfriend had, in fact, left the previous day for training; that she sometimes said "no" when she meant "yes" during sex; and earlier that evening, he attempted to pull down her pants and she said "knock it off," and pushed him away.

In short, the military judge allowed the defense to admit all the Mil. R. Evid. 412 evidence up to the point of actual penetration and intercourse. Regarding the earlier instances of sexual conduct, the military judge found the details of their intimate relations after consent had been established were simply not relevant. This was not a static decision that ignored the presentation of evidence - the military judge made the initial Mil. R. Evid. 412 ruling, then reevaluated and modified her earlier ruling as the case progressed and the relative importance of such evidence emerged. *See Ellerbrock*, 70 M.J. at 323 (Baker, J., dissenting).

Relevancy is a low standard, and we recognize that another military judge may have reached a different conclusion. However, "the abuse of discretion standard calls 'for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011); *see also United States v. Rhodes*, 61 M.J. 445, 457 (C.A.A.F. 2005) (Crawford, J., concurring in part and dissenting in part) (noting that a split on an issue indicates that reasonable judicial minds can disagree but that simple disagreement is not sufficient to overturn a military judge's decision). We believe the military judge's decision in this case was fully consistent with the judge's duty to serve as a "gatekeeper deciding first whether the evidence is relevant . . .". *Roberts*, 69 M.J. at 27 (quoting *Banker*, 60 M.J. at 224). Under the facts and circumstances of this case, we find that the military judge did not abuse her discretion. The central issue for the trier of fact, was resolving whether there was consent, lack of consent, or mistake of fact as to consent. As the gatekeeper, the military judge correctly ruled the intimate details of the prior sexual relationship between appellant and SPC MT past the point of consent were not relevant.

---

(. . . continued)
incapacitation by the victim. Additionally, the record is devoid of any argument by trial counsel that this is anything other than a rape by force as charged.

Because the military judge decided this issue on logical relevance grounds, she did not reach the balancing test of Mil. R. Evid. 403. We have considered the entire record and conducted a de novo review. UCMJ art. 66(c). We are convinced that even if this evidence has some logical relevance, that marginal relevance is substantially outweighed by the danger of a trial within a trial comparing the previous sexual movements and positions with the sexual assault at issue. *See United States v. Berry*, 61 M.J. 91, 97 (C.A.A.F. 2005) (holding that the military judge must consider the "possible distraction of the fact-finder that might result from admission of the testimony."). As noted above, the movements and positions at issue, those occurring on or before 26 August 2009 and that related to the charged offense, are quite distinct by time, location, and circumstances - to say nothing of the consciousness of SPC MT. As such, this dispute would distract the members by confusing the issues.

Assuming *arguendo* that the military judge abused her discretion by excluding evidence pursuant to Mil. R. Evid. 412, and assuming the evidence of sexual positions and characterization of the sex as "rough and fast" were relevant and material;[6] and the evidence was constitutionally required, we must then determine whether the military judge's error was harmless beyond a reasonable doubt. *Ellerbrock*, 70 M.J. at 320 (citing *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007)). In assessing harmlessness, we apply the five *Van Arsdall* factors: (1) the importance of the testimony; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradictory evidence on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.* (citing *Van Arsdall*, 475 U.S. at 684).

First, we note the only issues in this case were whether SPC MT consented or appellant was mistaken as to her consent. Her testimony was clearly important to the government case. There was no other eyewitness testimony to the incident. As such, this factor weighs in favor of finding harm. As to the second factor, the testimony would have been cumulative. There were many questions by defense concerning the victim's behavior in regards to the prior consensual sexual encounters. This factor also relates to factor four, in that the military judge allowed

---

[6] The test for materiality is a multi-factored test that evaluates "'the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which the issue is in dispute; and the nature of the other evidence in the case pertaining to the issue.'" *Banker*, 60 M.J. at 222 (quoting *United States v. Colon-Angueira*, 16 M.J. 20, 26 (C.M.A. 1983)). We note that since the military judge based her decision on relevance, she was not required to assess materiality and balance the probative value of the evidence with the danger of unfair prejudice. Mil. R. Evid. 412(c)(3).

a tremendous amount of detailed cross-examination of the victim regarding the previous occasions of sex with appellant. There was no contradictory testimony regarding SPC MT's version of events – appellant did not testify at trial nor did he testify for the purposes of the Mil. R. Evid. 412 motion. There were, however, several pieces of corroborating testimony including DNA evidence which confirmed sexual intercourse (but not force), the testimony of SPC MT's supervisor regarding her initial report of the offense, the testimony of the same supervisor where appellant denied any sexual activity, and the arguably inculpatory texts from appellant to SPC MT after the incident. Finally, the last factor weighs in favor of the government, as the government had a strong case and a strong victim. The details of her testimony were consistent, she openly admitted to the previous sexual encounters with appellant, and provided evidence that on this occasion she did not consent to sex and clearly manifested her lack of consent to appellant. Accordingly, we conclude that the *Van Arsdall* factors weigh in favor of the government, and any error is harmless beyond a reasonable doubt.

## CONCLUSION

On consideration of the entire record, the assignments of error, and the matters raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A 1982), the findings of guilty and the sentence are AFFIRMED.

Judge ALDYKIEWICZ concurs.

KERN, Senior Judge, dissenting:

I respectfully dissent. With the low threshold for relevance under Military Rule of Evidence [hereinafter Mil. R. Evid.] 412 as highlighted by the majority, I conclude that the military judge erred by excluding evidence pertaining to prior consensual sexual encounters between appellant and Specialist (SPC) MT. During a motions hearing regarding the admissibility of evidence pertaining to prior consensual sexual activity between SPC MT and appellant, SPC MT testified that on previous occasions she and appellant had three to four other consensual sexual encounters. She further described some of these encounters as rough and fast sex in which she was face down on her stomach and he was on top. Moreover, on at least one occasion, SPC MT told appellant "no" but did not mean it. During the government case-in-chief, SPC MT testified that during the alleged sexual assault in question, the appellant turned her from her back to her stomach and then penetrated her from the rear. Since the body positions of the sexual act in question could be considered non-traditional and were similar to body positions in their prior sexual encounters, I find that they were relevant to the issue of whether it was more or less likely that SPC MT consented to the sexual act and that appellant had a reasonable mistake of fact as to whether SPC MT consented to the act.

The government needed only to present evidence of vaginal penetration by force to meet its elemental burden for the charged offense. However, when SPC MT testified during the government case-in-chief concerning the alleged sexual assault, she provided evidence describing appellant's and her body positions. She described being flipped over to a face down position and being penetrated from behind, unlike a traditional missionary position. Although I believe the evidence of the body positions of the prior sexual incidents was relevant before that point, which would have allowed the defense to raise it during their cross examination, it became even more relevant once the government introduced this evidence of the body positions during the alleged assault. I cannot imagine that the description of the position of the bodies and penetration from the rear was not relevant to the panel and did not inform them in their evaluation of the defenses of consent and reasonable mistake of fact of consent. Moreover, without knowledge that prior sexual activity between appellant and SPC MT included sex while SPC MT was face down on her stomach, the panel was left with the impression that this alleged sexual assault was the first time sex between the two occurred in this type of sexual position and inflated this position as an attack from behind with SPC MT in a defenseless position. This impression makes it less likely SPC MT would either consent or that appellant would have reasonable mistake of fact on whether she would consent to activity in that manner. As such, I find that this information was relevant, and the judge erred by preventing appellant from garnering information during cross examination of SPC MT that she and appellant had rough fast sex on prior occasions while she was in a face down position.

I am also not persuaded by the majority's suggestion that appellant needed additional support, such as his testifying, in order to make the issue of sexual movements and positions relevant to the defenses of consent or reasonable mistake of fact as to consent. Specialist MT testified during the motion hearing that the prior sexual encounters included rough fast sex while she was in a face down position and this evidence was uncontroverted. For the reasons stated above, I find this evidence on its own to be relevant to the aforementioned defenses.

After getting past the low relevance hurdle, I also conclude that this information would have been admissible under a Mil. R. Evid. 412 analysis as either an exception under Mil. R. Evid. 412(b)(1)(B) or because it was material and its exclusion was prejudicial. *See United States v. Gaddis*, 70 M.J. 248 (C.A.A.F. 2011); *United States v. Ellerbrock*, 70 M.J. 314 (C.A.A.F. 2011). As for materiality, this evidence goes right to the heart of appellant's consent and reasonable mistake of fact defenses. In addition, my assessment of the *Van Arsdall* factors finds, with the possible exception of cross-examination otherwise permitted, all factors side with appellant. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In particular, I disagree with the majority that this was a strong case. Without a confession or physical evidence corroborating nonconsensual sexual activity, this was not a strong case for the government.

Finding the military judge abused her discretion by excluding relevant, material evidence and that the exclusion was prejudicial to the appellant, I would set aside the findings of guilty to The Charge and its Specification.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court