# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 16057**

_____

**UNITED STATES**
*Appellee*

**v.**

**Steven K. PFLUG**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

_____

Review of Petition for Relief Referred by The Judge Advocate General
pursuant to Article 69(d)

Decided 20 February 2018

_____

*Military Judge:* Tiffany M. Wagner.

*Approved sentence:* Confinement for 20 days, reduction to E-4, and a reprimand. Sentence adjudged 19 December 2015 by SpCM convened at Wright-Patterson Air Force Base, Ohio.

*For Appellant:* Major Allen S. Abrams, USAF; Brian Pristera, Esquire.

*For Appellee:* Major Mary Ellen Payne, USAF; Major Matthew L. Tusing, USAF.

Before MAYBERRY, JOHNSON, and DENNIS, *Appellate Military Judges.*

Chief Judge MAYBERRY delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

MAYBERRY, Chief Judge:

Contrary to his pleas, Appellant was convicted by a panel of officers sitting as a general court-martial of one specification of abusive sexual contact by causing Technical Sergeant (TSgt) MH's hand to touch his penis through his pants without her consent in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. Appellant was found not guilty of another specification of abusive sexual contact and four specifications of assault consummated by a battery in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928. The members sentenced Appellant to confinement for 20 days, reduction to the grade of E-4, and a reprimand. The convening authority approved the adjudged sentence.

The office of the staff judge advocate for the general court-martial convening authority reviewed the case under Article 64(a), UCMJ, 10 U.S.C. § 864(a), and found the conviction and sentence to be legally sufficient. Appellant requested review by The Judge Advocate General (TJAG) of the Air Force under Article 69(b), UCMJ, 10 U.S.C. § 869(b), alleging the evidence was legally and factually insufficient to support the finding of guilty and overcome mistake of fact as to consent, and the military judge erroneously applied Military Rule of Evidence (Mil. R. Evid.) 413. Pursuant to Article 69(d), UCMJ, 10 U.S.C. § 869(d), TJAG sent the case to this court for review.[1] In light of our superior court's holding in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), we must set aside Appellant's conviction and sentence.

## I. BACKGROUND

All of the charges and specifications arose during Appellant's temporary duty (TDY) tour to Kadena Air Base (AB), Japan, in July 2014. Appellant, a member of the 121st Comptroller Flight, accompanied members of the Air Transportation Flight of the 121st Logistics Readiness Squadron, 121st Air Refueling Wing from Rickenbacker Air National Guard Base, Ohio, on the TDY to assist with travel vouchers and other financial needs. During their two weeks in Japan, Appellant and members of the 121st made the most of their time away from home but learned that what goes TDY, does not stay TDY.

The six charged offenses involved allegations by three different military members: TSgt MH, TSgt KR, and Airman First Class (A1C) MP. Appellant was alleged to have touched TSgt MH's clothed buttocks with his penis

---

[1] In a case referred to us under Article 69(d), UCMJ, notwithstanding our Article 66, UCMJ, power, we "may take action only with respect to matters of law." Art. 69(e), UCMJ. Consequently, we are only permitted to review the evidence for legal sufficiency.

(through his pants) without her consent while on an escalator; caused TSgt MH's hand to touch his penis (through his pants) without her consent while dancing; licked A1C MP's face while drinking; kissed A1C MP's neck at the bowling alley; licked TSgt KR's left ear in his billeting room; and slapped TSgt KR's buttocks through her pants in the casino section of the enlisted club. The evidence surrounding these allegations was presented over the course of six days of trial. Fourteen witnesses were called by the parties on findings, three of which were recalled by the members after each side rested their case. We will focus primarily on the facts and circumstances surrounding the abusive sexual contact conviction.

On 24 July 2015, Senior Airman (SrA) ML had a party in his hotel room that several 121st members and Appellant attended. TSgt MH was intoxicated during this party and had at least four drinks. At some point, SrA ML, TSgt MH, and Appellant were dancing in the middle of the room.

TSgt MH claimed Appellant forcefully grabbed her hand and placed it on his penis while the two were dancing in SrA ML's room. TSgt MH's memory of the evening varied over time. Initially, she had no recollection of her hand touching Appellant's penis until TSgt CA[2] showed her a video the following day. In her sworn, written statement to the Air Force Office of Special Investigations (AFOSI), TSgt MH said that Appellant grabbed her hand and placed it on his penis, but omitted that he rubbed her hand down the front of his body and that she could not remember the incident the next day. At trial, she testified that as she was dancing with SrA ML, Appellant came up, grabbed her wrist and rubbed it down the front of his body, until it stopped on his penis. On cross-examination regarding the differing versions, TSgt MH said:

> Q. So you didn't remember [the incident] happening the night before?
>
> A. No.
>
> Q. When you saw that video for the first time, how did that make you feel?
>
> A. I was embarrassed. I asked her to delete the video as soon as I saw it.
>
> . . .

---

[2] TSgt CA had married by the time of trial but we will refer to her by her maiden name in this opinion.

Q. And the reason you wanted [AFOSI] to not have that information, is because you wanted them to believe that you were a victim, right?

A. Correct.

Q. And somebody that has this hand going down the chest, or forgets about this traumatic event the next day, is less likely to be believed as a victim, correct?

A. Correct.

TSgt CA, a friend of the victim, testified "[Appellant] took her hand, her left hand, and rubbed it seductively, like you know, in an 's-shape' all the way down his chest, and placed her hand on his crotch." TSgt CA said the snaking motion of the hand was slow and seductive, and that TSgt MH's hand remained on Appellant's penis for two to three seconds. TSgt CA used her cell phone to video the incident because it looked like everyone was having fun. TSgt CA stated that TSgt MH appeared disgusted after viewing the video and TSgt CA deleted the video when TSgt MH asked her to do so.

Appellant waived his Article 31, UCMJ, rights and spoke to AFOSI. Initially, Appellant said that the trip to Kadena AB was calm and uneventful and that the base was "on lockdown" and, because of that, "no one got in any trouble." As the interview progressed, Appellant changed his story and stated that the group behaved "as if they were in a frat house," the trip was "one big party" and the members were "acting wild." Initially, Appellant stated that he did not drink much alcohol on the trip, but later stated that he, along with others, did drink almost every day or night in large quantities. Appellant talked to AFOSI about the night of the get-together in SrA ML's room. All of the males had their shirts off, there was music playing, and alcohol being consumed. Appellant admitted placing TSgt MH's hand on to his crotch but stated it was consensual.

At trial, Appellant took the stand in his own defense. Appellant did not deny that the touching occurred, but stated that he did not remember placing her hand on his crotch. He acknowledged that it could have happened. When asked to explain his statements to AFOSI, Appellant stated that he "blacked out" during his AFOSI interview, that he "came to" at some point but "never fully came back," and it was in that state that he answered their questions. Appellant also described the dancing incident as part of a series of consensual flirting and sexual interactions, asserted that TSgt MH told him, while flirting, "I probably wouldn't be able to keep my hands off of you and you are married. You are a married man." Appellant testified that TSgt MH, TSgt KR, and A1C MP never told him that they were uncomfortable or upset during the TDY trip.

Appellant further testified that on the same night, TSgt MH was "sexually aggressive" towards him, pressed him against the wall while licking his chest,[3] and asserted TSgt MH later told him, "I want to f[**]k your brains out." According to Appellant, TSgt MH later pulled him into a bathroom in SrA ML's room, kissed him, and performed oral sex on him. TSgt MH then grabbed his arm, said, "You are coming to my room with me," and walked Appellant back to her room where the two had consensual intercourse. TSgt MH denied that she had any sexual interaction with Appellant, but admitted to leaving SrA ML's room with Appellant and that she asked Appellant to enter his room. TSgt CA confirmed that Appellant and TSgt MH left the party together.

The military judge gave the following instruction:

> Further, evidence that the accused committed the sexual offenses alleged in Specification 1 of Charge I and Specification 2 of Charge I may have no bearing on your deliberations in relation to each other, unless you first determine by a preponderance of the evidence, that it is more likely than not, the offense alleged in Specification 1 . . . occurred . . . even if you are not convinced beyond a reasonable doubt that the accused is guilty of the offense, you may nonetheless then consider the evidence of the offense for its bearing on any matter to which it is relevant in relation to Specification 2 of Charge I.

## II. DISCUSSION

### A. Legal Sufficiency

#### 1. Law

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "beyond a reasonable doubt" does not mean that the evidence must be "free from conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986) (citing *United States v. Steward*, 18 M.J. 506 (A.F.C.M.R. 1984)). "[I]n resolving questions of legal sufficiency, we are bound to draw every

---

[3] Appellant later made a restricted report and then an unrestricted report alleging only SrA ML sexually assaulted him by licking his chest. Appellant further alleged TSgt MH assisted SrA ML's assault by restraining Appellant. As a result, TSgt MH testified under a grant of immunity.

reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The elements for Article 120, abusive sexual contact, as charged, are as follows:

> (1) That on or about 16 July 2014, at or near Kadena Air Base, Japan, Appellant committed sexual contact upon TSgt MH to wit: causing her hand to touch his penis through his pants, with the intent to gratify his sexual desire;

> (2) That Appellant did so by causing bodily harm to TSgt MH to wit: causing her to touch his penis through his pants; and

> (3) That Appellant did so without her consent.

*See Manual for Courts-Martial, United States* (2012 ed.) pt. IV, ¶ 45(b), (c).

Bodily harm means "any offensive touching of another, however slight, including any nonconsensual sexual act or nonconsensual sexual contact." *Id.* at ¶ 45(g)(3). Sexual contact includes "touching, or causing another person to touch, either directly or through the clothing, any part of any person, if done with an intent to arouse or gratify the sexual desire of any person." *Id.* at ¶ 45 (g)(2)(B).

**2. Analysis**

The trial defense counsel made a motion pursuant to Rule for Courts-Martial (R.C.M.) 917 and R.C.M. 1102 after the members had come back with their finding of guilty. The assertion then was the same as before us now, the evidence presented by the Government was legally insufficient to prove that mistake of fact as to consent did not exist, or that Appellant lacked a reasonable belief that TSgt MH was consenting.

Appellant's argument is premised on the fact that TSgt MH did not object to Appellant touching her hand, placing her hand on his chest, or having her hand rubbed seductively on his naked chest downward toward his crotch. Appellant asserts it was implied that the touching would naturally continue to his crotch and there was no manifestation of a lack of consent until TSgt MH's hand had been touching his penis for a few seconds.

For Appellant's assertion to prevail, his mistake of fact as to consent had to be reasonable. The members were instructed to consider the location of the act, the reaction of either party, the relationship between the parties, and any other fact they may find relevant. They were further instructed to consider the probability or improbability of the evidence presented, Appellant's age, education, experience, the nature of the relationship between Appellant and TSgt KH, as well as the time, place, and atmosphere where the conduct occurred.

Considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found that TSgt KH did not consent to Appellant placing her hand on his penis over his clothes. While Appellant may have believed it was reasonable for a junior noncommissioned officer to consent to a 29-year old married E-7 grabbing her hand and seductively rubbing it down his chest onto his penis in front of co-workers while TDY, that ultimate decision was for the members to make. The members heard all of the evidence, personally observed all of the witnesses, and had the sole responsibility of assessing the credibility of the witnesses. *See United States v. Griffith*, 27 M.J. 42 (C.M.A. 1988) (in determining legal sufficiency we do not assess the credibility of witnesses). The finding of guilty is legally sufficient.

## B. Propensity Instruction

### 1. Law

The meaning and scope of Mil. R. Evid. 413 is a question of law that we review de novo. *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016). Instructional errors are also reviewed de novo. *Id.* at 357.

Mil. R. Evid. 413(a) provides that in a court-martial where the accused is charged with a sexual offense, evidence that the accused committed other sexual offenses may be admitted and considered on "any matter to which it is relevant." This includes using evidence of sexual assaults to prove the accused has a propensity to commit sexual assault. *United States v. James*, 63 M.J. 217, 220 (C.A.A.F. 2006).

In *Hills*, the United States Court of Appeals for the Armed Forces (CAAF) held that evidence of the accused's commission of a sexual assault may *not* be used to prove propensity if the alleged sexual assault is charged in the same court-martial and the accused has pleaded not guilty to it. 75 M.J. at 356. The CAAF further held that the instructions accompanying the admission of evidence of charged offenses for Mil. R. Evid. 413 purposes "violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error." *Id.* Because "there are constitutional dimensions at play," we test for prejudice under the standard of harmless beyond a reasonable doubt. *Id.* at 357. "An error is not harmless beyond a reasonable doubt when 'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" *Id.* at 357 (quoting *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007)). "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Id.* at 358 (quoting *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007) (internal quotation marks omitted) (citation omitted)).

In *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), the CAAF clarified that *Hills* is not to be interpreted narrowly, stating:

> [T]he use of evidence of charged conduct as M.R.E. 413 propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected. Whether considered by members or a military judge, evidence of a charged and contested offense, of which an accused is presumed innocent, cannot be used as propensity evidence in support of a companion charged offense.

*Id.* at 222. The court reiterated that, where such error exists, the Government must "prove there was no reasonable possibility that the error contributed to [Appellant's] verdict." *Id.; see also United States v. Guardado*, 77 M.J. 90, (C.A.A.F. 2017) (holding that under the facts and circumstances of that case, the court was unable to conclude that the military judge's Mil. R. Evid. 413/414 instruction was harmless).

### 2. Analysis

The Government concedes that, in light of *Hills* and *Hukill*, the military judge erred in permitting evidence of the charged sexual offenses to be used pursuant to Mil. R. Evid. 413 and instructing the court members accordingly. We agree. Although the military judge's ruling is understandable coming as it did before the decision in *Hills*, we must "apply the clear law at the time of appeal, not the time of trial." *United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010) (citing *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008)); *see also Johnson v. United States*, 520 U.S. 461, 469 (1997). Nevertheless, the Government contends the error in Appellant's case is harmless beyond a reasonable doubt. We disagree.

The members acquitted Appellant of the abusive sexual contact involving touching TSgt MH's buttocks through her pants with his penis on the escalator. The Government contends the fact that the members reached a mixed verdict on the charged sexual offenses "is compelling evidence that they were not unduly and improperly influenced by the propensity instruction." However, the CAAF rejected such reasoning in *Guardado*, explaining "[i]t simply does not follow that because an individual was acquitted of a specification that evidence of that specification was not used as improper propensity evidence and therefore had no effect on the verdict." 77 M.J. at 94.

TSgt MH reported the dancing incident the first drill weekend after they returned from Japan, was interviewed by AFOSI, and gave a written statement. The written statement only alleged Appellant placed her hand on his penis, omitting the fact that he rubbed her hand down the length of his torso before doing so and that she did not recall the incident until seeing the video

the following day. At trial, TSgt MH testified that while she did not recall the incident happening until seeing the video the next day, she now remembered the event and was testifying as to her memory, not what she saw on the video. Her description at trial was that Appellant had his back to her, grabbed her left hand by the wrist and moved it from his chest, down his torso, ending at his crotch. When she realized what had happened she pulled her hand away. She admitted she was embarrassed when seeing the video and asked TSgt CA to delete it. There was no video offered at trial.

During his AFOSI interview, Appellant initially denied touching TSgt MH, but later admitted that he rubbed TSgt MH's right hand down his chest and stopped on his crotch. In his written, sworn statement, Appellant described this touching as consensual. At trial, Appellant did not recall rubbing TSgt MH's hand on his chest to his crotch, asserting "I can't say it's impossible that it could happen or I do not remember it happening." He went on to state that he only admitted to AFOSI that this happened because AFOSI told him they had a video, adding he told AFOSI the same thing at the time he gave his written statement, which the AFOSI special agent confirmed. However, the agent asked him if they told him they had a video of him shooting Michael Brown in Ferguson, Missouri, would he admit to that, his response was "No, because I didn't do it."

TSgt CA witnessed the entire incident and recorded it on her phone. She testified that she recorded it not because she felt the activity was wrong, but because it looked as if they were having fun and she thought it was funny that they were dancing. She showed the video to TSgt MH the following day and deleted it at TSgt MH's request. In addition to TSgt MH and Appellant, SrA ML and TSgt CA testified that they saw TSgt MH react in "disgust" and abruptly leave after Appellant was dancing with her — but both testified that they saw TSgt MH and Appellant leave together, which corroborates TSgt MH and Appellant's testimony. While there is some dispute as to whether they went to TSgt MH or Appellant's room, the uncontroverted evidence was that they voluntarily went to the same room after leaving the party.

The testimony available for the members' consideration was conflicting. Appellant may have believed the touching was consensual and it was "inevitable" that he would end up placing TSgt MH's hand on his crotch. TSgt MH's testimony that she was standing behind Appellant and she removed her hand within seconds of it reaching Appellant's penis provided evidence for the members to determine she did not consent.

In light of *Hills* and *Hukill*, and considering all the evidence and the instructions, we cannot conclude there is "no reasonable possibility" the error contributed to the verdict of guilty as to Specification 2 of Charge I. Accordingly, we must set the finding aside.

### III. CONCLUSION

The finding of guilty as to Specification 2 of Charge I and the sentence are **SET ASIDE**. A rehearing as to findings and sentence is authorized. The record is returned to The Judge Advocate General for remand to the convening authority for action in accordance with this opinion.

FOR THE COURT

JULIE L. ADAMS
Acting Deputy Clerk of the Court