# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, WOLFE, and FEBBO
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist WILLIAM P. MOYNIHAN**
**United States Army, Appellant**

ARMY 20130855

Headquarters, Fort Campbell
Steven E. Walburn, Military Judge
Colonel Sebastian A. Edwards, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on brief); Major Julie L. Borchers, JA; Captain Oluwaseye Awoniyi, JA (on reply brief)

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Jeremy S. Watford, JA (on brief).

26 November 2018

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

This case is again before us for review pursuant to Article 66, Uniform Code of Military Justice (UCMJ), to examine whether the military judge's propensity instruction was harmless beyond a reasonable doubt. The Court of Appeals for the Armed Forces (CAAF) remanded this case to us to consider our prior decision in light of its decision in *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017). *United States v. Moynihan*, No. 18-0118/AR, 2018 CAAF LEXIS 127 (C.A.A.F. 6 Mar. 2018).[1] In the end, we affirm some of the findings of guilty, set aside others, and reassess the sentence.

---

[1] This case has a long history. Initially, we summarily affirmed appellant's findings

(continued . . .)

A panel of members convicted appellant, contrary to his pleas, of rape, lesser-included offenses of aggravated sexual contact, wrongful sexual contact, and incest in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920 and 934 (2006 & Supp III 2010). The adjudged and approved sentence provided for a dishonorable discharge, confinement for six years, and a reduction to the grade of E-1.

## BACKGROUND

Appellant's younger sisters, MM, JM, and EC, alleged that appellant engaged in various sexual encounters with them on multiple occasions between 2009 and 2011.

Specifications 1 and 2 of Charge I alleged appellant raped MM while at appellant's apartment in New York in 2009. These specifications, respectively, asserted that appellant raped MM by penetrating her vagina with his finger and penis. MM testified at trial that, while watching a movie, appellant began to tickle and roughhouse with her. Appellant pulled her to the floor and eventually removed her pants. Appellant removed his pants and had an erection. He then inserted his finger into her vagina, and, later, his penis.

The appellant recounted this event during his recorded interview with the Army Criminal Investigation Command (CID), which the government admitted at trial.[2] Appellant stated that he and MM were on the floor wrestling. He got on top of MM and started to tickle the inside of MM's thigh and pulling on her underwear. Appellant stated he liked underwear. According to appellant, when his wife called

_____

(. . . continued)
of guilty and the sentence. *United States v. Moynihan*, ARMY 20130855 (Army Ct. Crim. App. 12 Nov. 2015) (summ. disp.). The Court of Appeals for the Armed Forces (CAAF) set aside our decision and remanded the case back to this court in order to reconsider our decision in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016). On remand, we conditionally dismissed two specifications based upon the military judge's propensity instruction, affirmed the remaining findings of guilty, and reassessed the sentence. *United States v. Moynihan*, ARMY 20130855, 2017 CCA LEXIS 743 (Army Ct. Crim. App. 30 Nov. 2017).

[2] In our previous opinion we conditionally dismissed Specification 1 of Charge I involving MM and upheld the conviction of Specification 5 of Charge I, aggravated sexual contact with JM. We believed appellant's statement to CID on this subject pertained to JM, and was therefore corroborative of JM's testimony. As government appellant counsel note, with agreement from appellant, we erred. Appellant's statement regarding this incident pertained to MM; CID was not aware of the allegation involving JM at the time of appellant's interview.

them for dinner, he reached back and touched her vagina while attempting to pull up MM's shorts. Appellant claimed he wasn't trying to reach for MM's vagina when he pulled on her underwear. However, when asked by CID whether he had any sexual desire when pulling on MM's clothes, appellant responded "in part." Appellant did not admit to any other sexual activity during this incident.

The panel convicted appellant of aggravated sexual contact by touching MM's vagina, but acquitted him of penile rape.

Specification 3 of Charge I and Specification 3 of Charge III, respectively alleging rape and incest, involved an incident with MM that occurred in Moscow, Tennessee in late 2010. At trial, MM testified that, while at their parents' house, appellant backed her into a bathroom and closed the door. He then proceeded to take her pants down and insert his finger into her vagina, despite MM's efforts to fight him off. She stated this lasted around two minutes and ended when somebody knocked on the bathroom door.

During his interview with CID, appellant admitted, both orally and in writing, this incident occurred. Specifically, appellant confessed to inserting the tip of his finger into MM's vagina. Appellant verbally related to CID that he put the point of his index finger into MM's vagina; in writing, appellant stated "[t]he very tip of my index finger touch [sic] inside her lip." According to appellant, this occurred in a hallway outside the bathroom, after MM showed appellant her panties.

The panel convicted appellant of both Specification 3 of Charge I and Specification 3 of Charge III.

Specification 4 Charge I alleged appellant engaged in an aggravated sexual contact with EC. EC testified that she and appellant were in the bathroom in their parent's house having a discussion. Appellant tried to unhook her bathing suit top. The conversation turned to a miscarriage she suffered. At some point, appellant removed his swimming trunks and wore only his underwear. Sitting on the toilet seat, appellant grabbed her right wrist and pulled her to his lap. EC felt appellant get an erection. After a brief moment, she got up and appellant proceeded to comment on her derriere. The incident ended when appellant's wife approached the bathroom.

Appellant told CID that EC sat on his lap, but for the purposes of consoling her after she discussed the miscarriage. Appellant admitted he got an erection when she was sitting in his lap.

3

The panel found appellant guilty of the lesser-included offense of wrongful sexual contact with EC (Specification 4 of Charge I).

Specifications 5 and 6 of Charge I, respectively, alleged appellant raped JM by penetrating her vagina with his finger and engaged in aggravated sexual contact with JM by touching her breast. These incidents occurred in 2010 at their parent's home in Tennessee. At trial, JM recanted previous statements that appellant had touched her breast. The only evidence supporting the rape allegation was JM's testimony, although she testified appellant touched her vaginal area over her clothing. Appellant's interview with CID did not address the allegations involving JM. As to Specification 5, the panel found appellant guilty of the lesser-included offense of aggravated sexual contact with a child. The panel acquitted appellant of Specification 6.

At the close of evidence, the military judge gave the panel an instruction modeled after a standard Military Rule of Evidence (Mil. R. Evid.) 413 and 414 instruction. *See* Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook [hereinafter Benchbook], 7-13-1 n.4 (1 Jan. 2010).[3] In essence, the military judge informed the members that, as to each victim, if they found by a preponderance of evidence that the appellant committed the alleged offense, the panel could then consider that evidence as to the charges involving the remaining victims "for their bearing on any matter to which they [were] relevant." The military judge also included in the instructions a standard spillover instruction.

During closing argument, trial counsel, without objection from the defense, highlighted the propensity instruction and the preponderance standard, especially as it related to the allegations involving JM.

## LAW AND DISCUSSION

It is indisputable the military judge's instructions to the panel violated CAAF's holding in *Hills*, notwithstanding the standard spillover instruction also provided. "The juxtaposition of the preponderance of the evidence standard with the proof beyond a reasonable doubt standard with respect to the elements of the same offenses would tax the brain of even a trained lawyer." *Hills*, 75 M.J. 358. "[P]ropensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are

---

[3] These instructions, for purposes of our review, were the essentially the same instruction at issue in *Hills*. 75 M.J. at 356.

connected." *Guardado*, 77 M.J. at 93 (quoting *United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017)).

Appellant objected to the *Hills* instruction at trial, thereby preserving the error for appeal. Accordingly, CAAF has framed the lens through which we must view this error – that is, whether the erroneous admission of charged misconduct as propensity evidence to prove other charged conduct was harmless beyond a reasonable doubt. Under this standard, the government must show there was no reasonable possibility that the error contributed to appellant's verdict. *Hukill*, 76 M.J. at 222 (citations omitted). This requires a determination "whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction." *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (internal quotation marks omitted) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

As the CAAF noted in *Guardado*, "There are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination.'" 77 M.J. at 94 (alteration in original) (quoting *Hills*, 75 M.J. at 358).

> To say that an error did not "contribute" to the ensuing verdict is not, of course, to say that the [factfinder] was totally unaware of the feature of the trial later held to be erroneous . . . .
>
> To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the [factfinder] considered on the issue in question, as revealed in the record.

*United States v. Hoffmann*, 75 M.J. 120, 128 (C.A.A.F. 2016) (quoting *Yates v. Evatt*, 500 U.S. 391, 403) (1991)).

We can dispense with the finding of guilty to Specification 5 of Charge 1, aggravated sexual contact with a child, JM. We simply cannot find the propensity instruction had no impact upon the members' determination when this conviction rested solely upon her testimony. Accordingly, we set aside that specification. *See e.g. United States v. Williams*, 77 M.J. 459, 464 (C.A.A.F. 2018) (despite the credible testimony of two victims, the Court noted "[a]bsent any supporting evidence, we simply cannot be certain that the erroneous propensity instruction did

not taint the proceedings or otherwise 'contribute to the defendant's conviction or sentence.'") (quoting *Hills*, 75 M.J. at 357).

Although appellant's conviction of Specification 4 of Charge I, wrongful sexual contact with EC, was supported by her testimony and a statement by appellant to CID, we likewise are not confident the propensity instruction did not influence this verdict. EC portrayed appellant's actions in the bathroom as forceful and sexually aggressive on several fronts, all occurring during a conversation concerning her miscarriage. Appellant's statement to CID claimed his act of pulling EC to his lap was simply to console EC concerning the miscarriage. Although appellant admitted to getting an erection once EC was on his lap, he did not confess to a sexual intent in his actions. While we are convinced of appellant's guilt to this offense, we cannot say that the propensity instruction did not play a role for the members in reconciling the gap between the discrepancies in appellant's statement and EC's testimony. We set aside this specification as well.

The findings of guilty involving MM, Specifications 1 and 3 of Charge I, present a closer call for us.

As for Specification 1 of Charge I, appellant admitted to CID that while wrestling with MM at his apartment in New York, he pulled on her underwear and shorts. During the same encounter, MM kept trying to pull her shirt on. When pressed by CID whether appellant was pulling on MM's clothing for his sexual desires, appellant acknowledged he was by saying "kind of" and "in part." However, in viewing this portion of the interview, it is clear to us appellant's statement was given in response to a question posed by CID and not a wholehearted acknowledgement of his sexual intent in touching MM. Again, we ourselves are convinced of appellant's guilt, as his claim that touching MM's vagina was an accident is not credible when the totality of the evidence to this charge, to include MM's testimony, is considered. However, that's not the question we are asked. Can we be confident that the improper propensity instruction did not factor into the member's deliberations in finding appellant guilty of this offense? No. It follows that this specification will be set aside.

Specification 3 of Charge I, in our view, does present a circumstance "where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by "tip[ping] the balance in the members' ultimate determination." *Guardado*, 77 M.J. at 94 (internal quotation marks omitted) (quoting *Hills*, 75 M.J. at 358). Although there were some discrepancies between appellant's statement to CID and MM's testimony (e.g. the penetrative act occurring in the bathroom versus in the hallway near the bathroom),

we are persuaded beyond a reasonable doubt of appellant's guilt by the overwhelming evidence, to wit: MM's testimony and the appellant's oral and written confession that he penetrated MM's vagina with his index finger.[4] Accordingly, we rest easily in the conclusion that the propensity instruction did not taint this conviction.

**CONCLUSION**

The findings as to Specifications 1, 4, and 5 of Charge I and the sentence are SET ASIDE. The remaining findings of guilty are AFFIRMED. A rehearing on Specifications 1, 4, and 5 of Charge I may be ordered by the same or a different convening authority.

The same or a different convening authority may: (1) order a rehearing on one or more of Specifications 1, 4, and 5 of Charge I; (2) dismiss Specifications 1, 4, and 5 of Charge I and order a rehearing on the sentence only; (3) dismiss Specifications 1, 4, and 5 of Charge I and reassess the sentence based on the affirmed findings of guilty, affirming no more than a dishonorable discharge, confinement for forty-two months, and reduction to E-1.[5]

---

[4] Appellant asserts that his confession was not reliable or voluntary, citing to several aspects of the CID interview (e.g. the length of the interview, that it was over three hours into the interview before appellant made an admission, and that appellant went to mental health at the conclusion of the interview). Having reviewed the interview, we do not share those concerns.

[5] In reassessing the sentence we are satisfied that the sentence adjudged on only Specification 3 of Charge I and Specification 3 of Charge III, would have been at least a dishonorable discharge, confinement for forty-two months, and a reduction to the grade of E-1. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). The rape of MM was easily the most serious offense of which appellant was convicted and carried a maximum punishment of confinement for life without the possibility of parole. This reassessment, being both appropriate and purging the record as it stands of error, does not otherwise limit the sentence that may be adjudged at a rehearing. *See* UCMJ, art. 63.

Senior Judge WOLFE and Judge FEBBO concur.



FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court